Alfonso Kennard, Jr. (pro hac vice)
Eddie Hodges Jr. (pro hac vice)
alfonso.kennard@kennardlaw.com
eddie.hodges@kennardlaw.com
KENNARD LAW P.C.
5120 Woodway Dr. Suite 10010
Houston, Texas 77056
Telephone: (713) 742-0900
Facsimile: (713) 742-0951
LEAD ATTORNEYS PENDING MOTION FOR *PRO HAC VICE*

Jonathan Weiss (SBN 143895)
Email:  jw@lojw.com
LAW OFFICE OF JONATHAN WEISS
10576 Troon Ave.
Los Angeles, CA  90064-4436
Telephone: (310) 558-0404

*Attorneys for Plaintiff Theron Aych*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA – WESTERN DIVISION

| THERON AYCH,<br><br>*Plaintiff,*<br><br>v.<br><br>UNIVERSITY OF ARIZONA;<br>THE ARIZONA BOARD OF REGENTS;<br>NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; UNIVERSITY OF CALIFORNIA, LOS ANGELES; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California Corporation; PACIFIC 12 CONFERENCE; DAVE HEEKE, individually, JEDD FISCH, individually, JIMMIE DOUGHERTY, individually, and DOES 1-10, inclusive,<br><br>*Defendants.* | Case No.<br>**COMPLAINT FOR**<br><br>**(1) SECTION 1981 DISCRIMINATION**<br>**(2) RACKETEERING**<br>**(3) SHERMAN ACT VIOLATION**<br>**(4) INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**(5) NEGLIGENT INTEREREFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE**<br>**(6) FRAUD; AND**<br>**(7) DEFAMATION**<br><br>**JURY DEMAND** |
|---|---|

ORIGINAL COMPLAINT

1   **NOW COMES**, Plaintiff Theron Aych (hereinafter "Coach Aych" or
2   "Plaintiff") files this Original Complaint against the University of Arizona ("U of A"),
3   the Arizona Board of Regents ("ABR"), Dave Heeke, individually, Jedd Fisch,
4   individually, James Dougherty, individually, the National Collegiate Athletic
5   Association ("NCAA"), the University of California, Los Angeles ("UCLA"), the
6   Regents of the University of California ("RUC"), and the Pacific 12 Conference
7   ("Pac-12"), collectively "Defendants," and will show the following:

8                                          **<u>INTRODUCTION</u>**

9          1.     From 2017-2020, Theron Aych ("Coach Aych") was the Wide Receiver
10  and Tight Ends Coach for the U of A football team. After Coach Aych's first season,
11  the U of A hired Kevin Sumlin ("Coach Sumlin") as the Head Coach of the U of A
12  football team.

13         2.     In an effort to terminate the entire coaching staff under the pretense of
14  ineffective coaching, U of A purposely transferred and released Coach Sumlin's
15  private football playbook to opposing college football teams from other NCAA and
16  Pac-12 institutions.

17         3.     U of A gave competitors access to Coach Sumlin's private playbook in
18  an effort to compromise the credibility U of A coaches and/or make its coaches look
19  bad during games.

20         4.     Defendants' improper conduct eliminated and/or restricted Coach
21  Aych's ability to be successful on U of A's football coaching staff, damaged Coach
22  Aych's coaching reputation, and injured Coach Aych's business and property interest
23  by putting into question, throughout the NCAA football coaching community, his
24  character, work ethic, and ability to be a successfully coach.

25         5.     Defendants conspired to misrepresent, conceal, omit, and/or fail to
26  disclose material facts regarding the release of Coach Sumlin's private playbook to
27  other NCAA institutions, including, but not limited to UCLA, and other NCAA and
28  Pac-12 schools.

6.      As a direct and proximate result of Defendants' actions, Coach Aych suffered reasonably foreseeable injury, including losing (i) compensation and benefits; (ii) business relationships; (iii) football and related employment opportunities; and (iv) his business reputation as a football coach.

7.      Defendants earn billions of dollars in revenues each year through college football. However, instead of allowing fair competition amongst member institutions, Defendants conspired to transfer and release the private playbook of Coach Sumlin to Pac-12, and possibly other NCAA institutions, with the effect of ensuring the demise of Coach Sumlin and his entire staff. The conspiracy to cause the demise of Coach Sumlin staff impacted U of A football's staff, players, and everyday people who gave everything to the U of A football team.

8.      African-American college football coaches are continuously discriminated against in connection with the terms and conditions of their employment and compensation and terminated even as far less successful white coaches are retained. Moreover, African-American college football coaches are more likely to be used as pawns and scapegoats to allow NCAA institutions the ability to justify their discriminatory animus. Here, white college football coaches and personnel are given second chances to coach at comparable NCAA institutions; while African-American coaches, such as Plaintiff, are denied comparable and equal opportunities based on conspiring schemes within NCAA institutions to diminish the reputation and credibility of African-American coaches.

9.      These conspired acts were intentional, and a blatant violation of the discrimination laws, antitrust laws, and have no legitimate pro-competitive justification.

## JURISDICTION AND VENUE

10.      This case arises under 18 U.S.C. §§ 1961-1968; and 15 U.S.C. § 1; as well as supplemental jurisdiction over related state law claims pursuant to 28 U.S.C. § 1367(a).

11. This Court has subject matter jurisdiction of this case under 28 U.S.C. §§ 1331 and 1337, and because this action arises under the federal laws.

12. The acts out of which this Complaint arises have occurred within the Central District of California and/or caused Plaintiff's damages and/or because Defendants are subject to personal jurisdiction in this district under 18 U.S.C. §§ 1965 as RICO stipulates that process may be served in "any judicial district of the United States" when required by the "ends of justice."

## SATISFACTION OF CLAIM PRESENTATION REQUIREMENT

13. In May 2021, Plaintiff presented claims to Defendant U of A, and the Arizona Board of Regents for the injuries, damages, and losses that are the basis for this action. Plaintiff timely filed this suit after denial of such claims. Since Defendants failed and refused to act on the claim within the time prescribed by the written letter, the claim shall be deemed to have been rejected by Defendants on July 5, 2021.

14. Pursuant to California Government Code § 905.6, Defendant the Regents of the University of California is exempt from requiring a claim form to be submitted prior to the initiating of a civil action.

## PARTIES

15. Plaintiff, Theron Aych, is an individual residing in Texas.

16. Defendant, University of Arizona, an institution of higher learning, is owned, operated, maintained and controlled by the State of Arizona or by an agency, board, department or bureau thereof.  University of Arizona may be served through Suzanne Templin – Secretary to the Board; 2020 N. Central Ave., Suite 230 Phoenix, AZ 85004-4593.

17. Defendant, the Arizona Board of Regents, which governs the University of Arizona, established under Article XI, Section 5 of the Arizona State Constitution. According to Arizona Revised Statutes § 15-1625, the Arizona Board of Regents is a corporate body that can sue and be sued. The Regents have its principal place of business in Phoenix, Arizona. Defendant is a resident of Arizona.

18.     Defendant, NCAA, is an unincorporated association of more than 1,200 United States colleges, universities, and athletic conferences, with its principal place of business in Indianapolis, Indiana.

19.     Defendant, University of California Los-Angeles, may be served through the Office of General Counsel – University of California – 1111 Franklin Street, 8th Floor Oakland, CA 94607.

20.     Defendant, Regents of the University of California, is formed under and empowered by Article IX, Section 9 of the California Constitution and oversees the ten universities including, UCLA. Defendant Regents' official office is in Alameda County, California, with its principal place of business at 1111 Franklin Street, Oakland, California 94607. Defendant, Regents of the University of California is a corporate body that can sue and be sued and has the power to take and hold property in its own name.

21.     Defendant Pacific 12 Conference is a multi-sport athletic conference and an unincorporated association, with its principal place of business located at 1350 Treat Boulevard, Suite 500, Walnut Creek, CA 94597.

22.     Defendant, Dave Heeke, is an individual residing in Arizona. Defendant Heeke is an American University sports administrator who currently serves as athletic director at the University of Arizona since 2017.

23.     Defendant, Jedd Fisch, is an individual residing in Arizona. Defendant Fisch is an American football coach who is currently the Head Coach at the University of Arizona since 2021.

24.     Defendant, James "Jimmie" Dougherty, is an individual residing in Arizona. Defendant Dougherty is an American football coach who is currently the Assistant Coach/Passing Game Coordinator & Quarterbacks at the University of Arizona since 2021.

## **INTERSTATE TRADE AND COMMERCE**

25.     Defendants and their co-conspirators are in the business of governing and operating major college football businesses, including the sale of tickets and telecast rights to the public which feature the individual and collective efforts of coaches such as Plaintiff. Defendants' sales are made to individuals and businesses located throughout the United States, including in this District. During the relevant times herein, Defendants did and will continue to transact business in and across state lines in a continuous and uninterrupted flow of interstate commerce throughout the United States.

26.     The NCAA is engaged in interstate commerce, including running the NCAA Division I Football Bowl Subdivision ("FBS") the highest level of college football in the United States.

27.     Within the FBS, the Power Five conferences are considered the elite in college football, attracting the largest audiences and the most revenues.

28.     The Pac12, nicknamed the "Conference of Champions," is a Power Five conference. It includes the following member institutions: University of Arizona, Arizona State University, University of California (Berkeley), University of Colorado, University of Oregon, Oregon State University, Stanford University, University of California, Los Angeles, University of Southern California, University of Utah, and Washington State University.

29.     The Pac-12 has a wholly owned media network, the Pac-12 Network. A USA Today report estimates that between Pac-12 Network and the conference's 12-year deal with ESPN and Fox, the Pac-12 could distribute as much as $30 million annually to each of its schools.

30.     The individual Defendants' business activities that are the subject of this Complaint were within the flow of and substantially affected interstate trade and commerce. The anticompetitive conduct alleged in this Complaint has a direct, substantial, and foreseeable adverse effect on United States commerce. Defendants'

interstate activities include, but are not limited to interstate: travel, communications, sales of tickets, sales of merchandise, advertisements and other promotions, broadcasting of games, employment of coaches and other personnel, recruitment of players, and negotiations of all of the foregoing.

31. As established in more detail infra, Defendants' and their co-conspirators' interstate businesses generate billions of dollars of commerce.

## FACTUAL ALLEGATIONS

32. This matter is primarily centered on the intentional release of Coach Sumlin's private football playbook to opposing teams from other Pac-12 and NCAA institutions; and the role internal figures within the University of Arizona played to ensure the release of this playbook. This release was deliberate and intended to harm and/or completely ruin Plaintiff's coaching reputation by directly targeting Coach Sumlin and his staff.

33. Coach Sumlin's private playbook was released by U of A and transferred to one or more of the NCAA and Pac-12 Conference member institutions, including but not limited to: University of Arizona and University of California – Los Angeles; pursuant to their rules, practices, and procedures at issue in this action, while engaging in interstate commerce as top-tier college football programs.

34. Plaintiff, Theron Aych, is a former collegiate athlete, who now has spent the last twenty-five years coaching football in multiple parts of the country, including, the University of Houston (2000-02); the University of Washington (2003); Central Missouri (2004-08); Angelo State (2011-15); the University of Texas – El Paso (2016); and the University of Arizona (2017-20).

35. During the 2017 season, Coach Aych was hired by the University of Arizona as the Assistant Coach and Wide Receivers and Tight Ends coach and Passing Game Coordinator for the U of A football team. When Coach Aych was initially hired, the head coach of U of A was Rich Rodriguez, who was fired at the end of the 2017 season.

ORIGINAL COMPLAINT

36.    During the 2018 season, U of A hired Kevin Sumlin as the head football coach, and retained Coach Aych within the coaching staff. The new head coach brought a brand-new playbook for the football program, which was considered private/confidential and only accessible via the University of Arizona's X-Drive.

37.    During the 2018-2020, college football seasons, U of A had a losing record, and the entire coaching staff, including Coach Aych, was terminated after the 2020 season due to a "poor season."

38.    Based on information and statements by individuals with first-hand knowledge, during Head Coach Sumlin's tenure at the University of Arizona, U of A executives, including Director of Athletics Dave Heeke, became disgruntled with him.

39.    Within eleven days of terminating the entire coaching staff, U of A hired Jedd Fisch as the new head football coach. That was surprising because typically searches for new staff, particularly a prestigious position such as a head coach of a university football team, are rigorous and undergo a time intensive selection process. Shockingly, Jedd Fisch never played college football, nor did he have any previous experience as a head coach. This hire made two things obvious. First, Heeke's long-standing relationship and history with Fisch likely influenced this choice. And second, Jedd Fisch had been hand chosen, possibly long before the actual termination of Coach Sumlin and his staff.

40.    Upon his hiring, Fisch immediately announced Jimmie Dougherty as his "Head Assistant Coach." Dougherty previously coached football at University of California, Los Angeles (UCLA) from 2017-2020. Coincidentally, Fisch had also recently spent time coaching at UCLA from 2017-2020.  Fisch and Dougherty had worked previously together at the University of Michigan prior to UCLA.

41.    On or about January 5, 2021, on his first day on the job for the University of Arizona, Dougherty handed to a thumb drive to an Assistant Quarterback Coach and Offensive Analyst for the University of Arizona. Dougherty instructed the Analyst to perform changes to the documents located within the thumb drive, specifically to

remove any UCLA logos within the documents and replace them with University of Arizona logos. *See* **Affidavit of John Marinelli ¶ 3**.

42.    On the thumb drive were 8 folders and 31 files. As this staff member worked his way through the thumb drive, **he discovered a call sheet which looked exactly like the one used at the University of Arizona**. To confirm his findings, a graduate assistant was called over who verified the surprise discovery as well. Continuing through the thumb drive, additional documents from the University of Arizona were found. **What was discovered on Dougherty's thumb drive by the University of Arizona's own staff was the entire playbook belonging to Coach Sumlin's coaching staff**. The documents found on Dougherty's thumb drive were previously only accessible via the University of Arizona's X-Drive. *See* **Affidavit of John Marinelli ¶ 4-6**.

43.    The X-Drive is a private, confidential, and secure server for the University of Arizona's football program. Aside from administrators at the University's McKale Memorial Center, the only other personnel within the University who had access to the X-Drive are those who worked in the University of Arizona's Athletics Department. *See* **Affidavit of John Marinelli ¶ 6**.

44.    Upon information and belief, unknown actors within the University of Arizona, with access to the X-Drive, disseminated propriety information regarding the University of Arizona's football program, to outside parties, for use against the University of Arizona's football team. *See* **Affidavit of John Marinelli ¶ 7**.

45.    The question remains how long Dougherty had possession of the thumb drive, Dougherty had previously been with UCLA since 2017, and on his first day on the job with the University of Arizona, he had possession of proprietary University of Arizona football documents **including Arizona's entire playbook belonging to Coach Sumlin's staff**. Shocked by his discovery and fearing the invaluable information could be and had been used against the University of Arizona on game

ORIGINAL COMPLAINT

days, the analyst documented his findings and spoke to other staff within the University of Arizona football program regarding the discovery.

46.     Upon information and belief, this is not the typical "stealing" of signs, etc., nor is it a matter involving mere spying by an opposing team. Based on information and belief, other NCAA and Pac-12 institutions, not limited to U of A and UCLA, may have had access to Coach Sumlin's private playbook throughout his entire tenure at University of Arizona.

47.     Upon information and belief, the documents found within Dougherty's thumb drive were not disseminated by anyone on Coach Sumlin's staff.

48.     Upon information and belief, the dissemination was a coordinated effort by the University of Arizona to undermine Coach Sumlin and his coaching staff so that Dave Heeke could make his associate Jedd Fisch one of the highest paid employees in the State of Arizona.

49.     The entire University of Arizona football staff under Coach Sumlin was intentionally set up for failure by the University of Arizona. Covid-19 happened to be an unexpected, yet perfect opportunity and excuse to terminate Coach Sumlin's staff before the end of the 2020-2021 Division I football season. Covid 19 was the golden ticket outside of their sinister acts to "justify" the termination, but true intentions were revealed when a new head coach was hired immediately after, who already had a copy of U of A's X-Drive.

50.     Plays had been stolen, distributed to rivals, and used against Head Coach Sumlin's football team at the University of Arizona possibly from the inception of his tenure until he was terminated in 2020.

51.     Upon information and belief, Pac-12 and NCAA member institutions, collusively released and received Coach Sumlin's private playbook, in attempt to ensure the demise of the U of A coaching staff, as alleged herein, and thereby has damaged and will continue to cause damage to Plaintiff professional reputation.

52.     During the relevant times herein, the NCAA collusively allowed the release of Coach Sumlin's private playbook to the continuing detriment of Plaintiff's professional reputation and credibility as a college football coach.

## CAUSES OF ACTION

### COUNT I

### DISCRIMINATION UNDER SECTION 1981
### (AGAINST NCAA AND PAC-12)

53.     Plaintiff reasserts and incorporates all allegations set forth herein.

54.     African Americans were not fully welcomed to college football until the late 1960s. African American college football coaches in comparison to white college football coaches, on average, have shorter tenures in college football coaching. With the exception of a few coaches at HBCUs, there are no African American coaches with long tenures, no Joe Paternos or Bobby Bowdens, both of whom have had more than 60 years' coaching experience, but also few with as much as 20 years' coaching experience.

55.     As described above, Defendants, NCAA and Pac-12 have allowed discrimination against Plaintiff on the basis of race and/or color in violation of Section 1981 by (i) allowing unfair competition amongst schools to diminish the professional reputation of African American college football coaches, specifically in this instance, Plaintiff (ii) subjecting Plaintiff to disparate terms and conditions of employment, including but not limited to, lack of opportunities and harm to Plaintiff's professional reputation due to racial biases and unethical practices; and (iii) subjecting Plaintiff and other African American coaches to a heightened scrutiny and unequal compensation relative to his white peers.

56.     Defendants, NCAA and Pac-12, have fostered, condoned, accepted, ratified and/or otherwise failed to prevent or remedy discriminatory conduct due to

ORIGINAL COMPLAINT

race and/or color. The NCAA and Pac-12 actually participated in and aided and abetted the discriminatory conduct of the other Defendants.

57.     The NCAA has one-hundred and twenty-nine (129) Football Subdivision Schools (FBS), but only fourteen (14) African-American head football coaches for FBS schools; and out of the twelve schools in the Pac-12, there are only (3) African-American head football coaches. (https://hithighlights.com/list-of-black-head-football-coaches-at-ncaa-division-i-fbs-schools/). Head coaches, with rare exceptions, come from the pool of assistant coaches (or previous head coaches) and this pool includes a greater number of African-American assistant football coaches in the FBS schools. However, the NCAA and Pac-12 have condoned discriminatory tactics to prevent African-American assistant football coaches from being promoted and selected into head coaching positions.

58.     In a wide variety of occupations, minority advancement can be hindered by certain jobs being viewed as appropriate for minorities (the "occupational ghetto") whereas others are reserved for whites. Assistant college football coaching jobs and/or specific position coaching jobs have been viewed as appropriate for majority of African American coaches due to their history of playing or coaching in that position, which limits African American coaches' ability to expand their coaching experiences. These stereotypes and biases have been condoned by the NCAA for years, and is evidenced by the gaps in head coach hiring among African American assistant and position coaches. Coupled with the history of heightened scrutiny on African American football coaches, and the allegations of anticompetitive conduct, and conspiracies to make coaches look bad, create inferences that the NCAA and Pac-12 have allowed discrimination against Plaintiff, and similarly situated African American assistant coaches on the basis of race and/or color in violation of Section 1981.

59.     As a direct and proximate result of Defendants' unlawful discriminatory conduct in violation of Section 1981, Plaintiff has suffered, and continues to suffer,

economic damages, loss of opportunity, loss of reputation and mental anguish for which they are entitled to an award of damages.

60.     Defendants' unlawful discriminatory actions constitute reckless, malicious, willful and wanton violations of Section 1981 for which Plaintiff is entitled to an award of punitive damages.

## COUNT II

## RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. §§ 1961-1968 ("RICO") SECTION 1962(C)

### (Against Defendants Dave Heeke, Jedd Fisch, Jimmie Dougherty)

61.     Plaintiff reasserts and incorporates all allegations set forth herein.

### RICO Section 1962(C)

62.     Section 904 (a) of RICO, 84 Stat. 947, directs that "[t]he provisions of this Title shall be liberally construed to effectuate its remedial purposes."

63.     18 U.S.C. § 1962(c). "To state a claim under § 1962(c), a plaintiff must allege '(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Odom v. Microsoft Corp.,* 486 F.3d 541, 547 (9th Cir. 2007) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 496, 105 S.Ct. 3275, 87 L.Ed.2d 346 (1985)).

64.     This Count is against Defendants listed above who (1) gave direction; (2) occupy a position in the chain of command; (3) knowingly implement decisions; and/or (4) is indispensable to achievement of the enterprise's goal.

65.     Dave Heeke, Jedd Fisch, and Jimmie Dougherty ("the individual Defendants") are individuals engaged in and whose activities affect interstate commerce.

66.     The individual Defendants are each a "person" as defined under 18 U.S.C. §1961(3), and further are jointly and/or severally an "enterprise" as defined under 18 U.S.C. §1961(4). Dave Heeke, Jedd Fisch, and Jimmie Dougherty's actions were "related" by a common scheme constituting a series of "predicate acts"

enumerated under 18 U.S.C. §1961(1). These related acts were "continuous" and demonstrated an ongoing "pattern" of unlawful activity extending over a substantial period of time, and exhibited a threat of being repeated in the future.

67.     Plaintiff alleges that under controlling Ninth Circuit precedent as set forth in *U.S. v. Benny,* 786 F. 2d 1410 (9th Cir. 1986), even a single individual can concomitantly constitute both the individual and the "enterprise" under federal law, and therefore Plaintiff has met all necessary criteria for application of RICO civil remedies authorized under 18 U.S.C. § 1964 (c).

68.     The individual Defendants agreed to and did conduct and participate in the conduct of the enterprise's affairs through a pattern of racketeering activity, (i.e., releasing and transferring the Coach Sumlin's private playbook), and for the unlawful common purpose of intentionally conspiring to defraud and misrepresent Coach Aych of his benefits and rights.

69.     Defendants conduct constituted a scheme to defraud Plaintiff of benefits and rights to obtain money, funds, or other property by means of numerous false and fraudulent pretenses, representations, promises, material omissions, concealments and/or non-disclosures for the common purpose of committing multiple related and continuous predicate acts against Plaintiff including but not limited to: § 1621 and § 1951(a) and also, for the purpose of executing this scheme, it is possible Defendants placed in post offices or authorized depositories for mail, matters or things to be sent or delivered by the Postal Service or other private or commercial interstate carriers in violation of 18 U.S.C. § 1341,118 and/or Defendants transmitted or caused to be transmitted by means of wire communication in interstate or foreign commerce, writings, signs, signals, pictures, or sounds for the purpose of executing such scheme or artifice in violation of 18 U.S.C. § 1343.

70.     Defendants' illegal acts (releasing and transferring Coach Sumlin's private playbook) as described in this Complaint have occurred and continue to occur since possibly, 2017, and constitute a pattern of racketeering activity

ORIGINAL COMPLAINT

under 18 U.S.C. § 1961, which has the threat of continuity because Defendants are defrauding Plaintiff of benefits and rights based on this conspiracy, which has caused harm to Plaintiff's reputation and future earnings.

71.    The Defendants' pattern of racketeering activity was committed in furtherance of association-in-fact involving each of the Defendants' officers, directors, employees, attorneys, agents and/or associates and which was, and still is engaged in conspiring to defraud Plaintiff of his benefits and rights.

72.    As a direct and proximate result of the Defendants' racketeering activities and violations of 18 U.S.C. § 1962 (C), Plaintiff has been injured in his business and property.

**COUNT III**

**15 U.S.C. § 1 VIOLATION OF SECTION 1 OF THE SHERMAN ACT**
**(Against Defendants Dave Heeke, Jedd Fisch, Jimmie Dougherty)**

73.    Plaintiff reasserts and incorporates all allegations set forth herein.

74.    The individual Defendants, Dave Heeke, Jedd Fisch, Jimmie Dougherty have conspired to create competitive restraints by exposing, transferring, and releasing the private playbook of U of A Coach Sumlin, in an attempt to cause the team to not be competitive against Pac-12 and NCAA member institutions, based on the pretense to terminate the entire coaching staff under the guise of ineffective coaching. This conspiracy is blatantly anticompetitive, and was used to give Defendants an unfair advantage in collegiate football games, and to fulfill the individual Defendants' goal of hiring a new coaching staff in violation of Section 1 of the Sherman Act.

75.    The restraints also constitute an unreasonable restraint of trade under the rule of reason, whether under a "quick look" or full-blown rule of reason analysis. Within their respective positions, the individual Defendants have market power in the relevant markets for the services of top-tier college football. Each of the individual Defendants are a participant in this unlawful conspiracy.

76.     The agreements among Dave Heeke, Jedd Fisch, Jimmie Dougherty relating to release and transfer of Coach Sumlin's private playbook is blatantly anticompetitive. The necessary means by which the members have accomplished and carried out this illicit horizontal conspiracy is their agreement to release, produce, and use Coach Sumlin's private playbook, in an effort to lose games, and justify termination of U of A's entire coaching staff. By entering into these agreements, Defendants, and the subset comprised of Elite College Football programs, have restrained competition in the NCAA Football Markets and Pac-12 Football Markets, respectively.

77.     The conspiracy consisted of a continuing agreement, understanding, or concerted action between and among the individual Defendants and their co-conspirators in furtherance of which Defendants fixed, maintained, or engaged in anticompetitive conduct by transferring and releasing Coach Sumlin's private playbook during the relevant time period by allowing Pac-12 and NCAA competitors to have access to U of A private "X-Drive, in an effort to pretextually and/or willfully terminate Plaintiff under the guise of a "poor season." Defendants' conspiracy constitutes a per se violation of the Sherman Act.

78.     Defendants' unlawful conduct was through mutual understandings, combinations or agreements by, between, and among Defendants and other unnamed co-conspirators. Defendants' conspiracy is a per se violation of the Sherman Antitrust Act and is, in any event, an unreasonable and unlawful restraint of trade.

79.     There is no legitimate business justification for, or procompetitive benefit caused by, Defendants' unreasonable restraint of trade. Any ostensible procompetitive benefit was pretextual or could have been achieved by less restrictive means.

80.     Absent the agreements to release and transfer Coach Sumlin's private playbook, each member of the NCAA and Pac-12 football program would be free of any doubt of unfair and anticompetitive conduct by these programs behind the scenes.

ORIGINAL COMPLAINT

The college football market would fluctuate based on actual coaching and student-athletes, rather than behind-the-scenes agreements to completely ruin Plaintiff's coaching reputation. And each NCAA and Pac-12 member, knowing it would be competing with every other member institution, without the idea looming that teams are receiving an unfair advantage, would make the competitive-market level in the College Football market more credible, thus raising more opportunities for revenue amongst all teams.

81.   Plaintiff has suffered and will continue to suffer antitrust injury by reason of the continuation of this unlawful conspiracy. This conspiracy to release the private playbook of Coach Sumlin injured and will continue to injure Plaintiff by depriving him of the ability to receive market value for their services as a college football coach in a free and open market.

82.   As a direct and proximate result of the unlawful conduct of Defendants in furtherance of the violations alleged, Plaintiff has been injured in its business and property, in an amount to be proven at trial and automatically trebled pursuant to 15 U.S.C. § 15. By agreeing to release, transfer, and produce Coach Sumlin's private playbook, as a means of enabling their anticompetitive expenditures, and insulating themselves from any liability by terminating Plaintiff under the guise of "poor season;" Defendants have artificially suppressed Plaintiff's coaching reputation and future earnings, and prevented Plaintiff from competing with Pac-12 and NCAA institutions to provide quality competitive football games, and from earning the profits Plaintiff would have earned but for U of A and UCLA's unlawful conduct.

## COUNT IV
## INTENTIONAL INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
### (Against University of Arizona, the Arizona Board of Regents, and the California Board of Regents)

83.   Plaintiff reasserts and incorporates all allegations set forth herein.

84.     The actions of Defendants as alleged herein constitute intentional interference with Plaintiff's prospective economic advantage, in violation of California law.

85.     On information and belief, Plaintiff alleges Defendants knew of Plaintiff's efforts to market himself as a highly valued football coach. Nonetheless Defendants have intentionally and willfully interfered, and attempted to interfere, with the prospective economic relationship Plaintiff sought to form with other member NCAA and Pac-12 institutions.

86.     On information and belief, by conspiring and fraudulently transferring the private "X-Drive" of Coach Sumlin, and releasing it to other NCAA and Pac-12 institutions, in an attempt to destroy Plaintiff's reputation; Defendants, purposefully and knowingly committed such acts designed to disrupt Plaintiff's ability to market himself within future contractual relationship. Indeed, such acts prevented Plaintiff from establishing a potentially lucrative business relationship with other member NCAA and Pac-12 institutions.

87.     As a proximate result of Defendants' conduct, Plaintiff has suffered harm, including lost wages and other financial benefits, in an amount to be proven at time of trial, with interest thereon at the legal rate.

88.     The aforementioned acts of Defendants were willful, oppressive, fraudulent and malicious. Plaintiff is therefore entitled to punitive damages in a total amount to be established by proof at trial.

## COUNT V

## NEGLIGENT INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE

### (Against University of Arizona, the Arizona Board of Regents, and the California Board of Regents)

89.     Plaintiff reasserts and incorporates all allegations set forth herein.

90.     The   actions   of   Defendants   as   alleged   herein   constitute negligent interference with Plaintiff's prospective economic advantage, in violation of California law.

91.     On information and belief, Plaintiff alleges Defendants knew of Plaintiff's efforts to market himself as a highly valued football coach. Nonetheless Defendants   have negligently   interfered,   and   attempted   to interfere,   with   the prospective economic relationship Plaintiff sought to form with other member NCAA and Pac-12 institutions.

92.     On information and belief, by conspiring and fraudulently transferring the private "X-Drive" of Coach Sumlin, and releasing it to other NCAA and Pac-12 institutions, in an attempt to destroy Plaintiff's reputation; Defendants, negligently committed such acts designed to disrupt Plaintiff's ability to market himself within future contractual relationship. Indeed, such acts prevented Plaintiff from establishing a potentially lucrative business relationship with other member NCAA and Pac-12 institutions.

93.     As a proximate result of Defendants' conduct, Plaintiff has suffered harm, including lost wages and other financial benefits, in an amount to be proven at time of trial, with interest thereon at the legal rate.

## COUNT VI
## COMMON LAW FRAUD

**(Against University of Arizona, the Arizona Board of Regents, and the California Board of Regents)**

94.     Plaintiff reasserts and incorporates all allegations set forth herein.

95.     To establish actionable fraud, the Plaintiff must show a concurrence of nine elements: (1) a representation; (2) its falsity; (3) its materiality; (4) the speaker's knowledge of its falsity or ignorance of its truth; (5) the speaker's intent that it should be acted upon by the person and in the manner reasonably contemplated; (6) the

hearer's ignorance of its falsity; (7) the hearer's reliance on its truth; (8) the hearer's right to rely upon the representation; and (9) consequent and proximate injury.

96.    In this case, Defendants, through a conspiracy to defraud, falsely misrepresented and/or failed to disclose their intentions to release and expose Coach Sumlin's private playbook to other member institutions within the NCAA. First, U of A made public representations that Plaintiff was terminated due to a "poor season;" yet it was known behind the scenes that U of A produced and transferred the "X-Drive" of Coach Sumlin's private playbook to NCAA and Pac-12 member institutions at a certain time during Plaintiff's employment.  Furthermore, Plaintiff was terminated on a duplicitous way, and now other NCAA and Pac-12 institutions will rely on the "poor season" assessment by U of A, which will proximately cause harm to Plaintiff's reputation and future coaching opportunities.

97.    Defendants knew that a conspiracy to defraud Plaintiff of his rights and benefits was actively taking place. Coach Aych was defrauded by the University of Arizona when the University undertook a coordinated effort to undermine and ensure the demise of the coaching staff it wanted to terminate under the pretense of ineffective coaching. Again, the entire University of Arizona football staff was fired on or before the end of the 2020-2021 Division I football season because of the deliberate and calculated actions described above and Covid 19 was simply an excuse to accelerate the termination. Misrepresentations made by the University of Arizona to its own staff, including Coach Aych, led our client to suffer injuries.

98.    A plaintiff may allege a unified course of fraudulent conduct and rely entirely on that course of conduct as the basis of that claim. In that event, the claim is said to be 'grounded in fraud' or to 'sound in fraud,' and the pleading ... as a whole must satisfy the particularity requirement of Rule 9(b). *Id.* at 1103–04. Defendants engaged in a fraudulent course of conduct. Moreover, U of A made a representation that Plaintiff was terminated due to a "poor season;" yet it was known behind the scenes that U of A produced and transferred the "X-Drive" with the private playbook

to member Pac-12 and NCAA institutions at a certain time during Plaintiff's employment. Now other institutions will rely on the "poor season" assessment, when making hiring decisions, which will proximately cause harm to Plaintiff's future coaching market value.

    i.      **Who**: Defendant U of A hired Plaintiff and represented to Plaintiff that: (1) the private playbook on the "X-Drive" would remain U of A property; and (2) U of A would to protect Plaintiff's best interests. Yet, U of A conspired with UCLA, the Pac-12, and possibly other NCAA institutions to release and transfer the "X-Drive" in an attempt to terminate Plaintiff based on a "poor season."

    ii.     **What**: The "X-Drive" containing Coach Sumlin's private playbook was released and transferred to Pac-12 and NCAA institutions. The X-Drive contains were 8 folders and 31 files, including Arizona's entire playbook belonging to Coach Sumlin's staff. Plaintiff was subsequently terminated for a "poor season" even though behind the scenes U of A released and transferred Coach Sumlin's staff private playbook to Pac-12 and NCAA institutions.

    iii.    **When**: Upon information and belief, the "X-Drive" was released and transferred to Pac-12 and NCAA institutions sometime before the 2021 season, but after Coach Sumlin was hired in 2018. Plaintiff was terminated in December 2020 due to a "poor season," and subsequently was unable to find comparable coaching jobs with a university with similar prestige as U of A or a Pac-12 school.

    iv.     **Where**: Defendants and their co-conspirators are in the business of governing and operating major college football businesses nationwide. U of A is located in Tucson, Arizona, and UCLA is located in Los Angeles. Upon information and belief, the "X-Drive" was released and transferred in at least Arizona and California, but may have also been sent to other Pac-12 and NCAA institutions nationwide.

    v.      **How**: Upon information and belief, Defendants conspired to release and transfer the private playbook for Coach Sumlin's staff. On or about January 5, 2021,

ORIGINAL COMPLAINT

on his first day on the job for the University of Arizona, former UCLA coaches Fisch and Dougherty handed a thumb drive to John Marinelli containing 31 files and 8 folders, including Coach Sumlin's staff private playbook. Dougherty instructed Marinelli to perform changes to the documents located within the thumb drive, specifically to remove any UCLA logos within the documents and replace them with University of Arizona logos. U of A represented that it would retain all private information within the University (including Coach Sumlin's private playbook), yet U of A intentionally, knowingly, and/or negligently released and transferred the private information in attempt to terminate Plaintiff under the guise of a "poor season." Upon information and belief, the X-Drive file could have been sent to Defendants via email, and/or using U.S. mailing services sometime between 2018 and January 2021 (end of 2020 season).

## COUNT VII

## DEFAMATION

**(Against University of Arizona, and the Arizona Board of Regents)**

99.    Plaintiff reasserts and incorporate all allegations set forth herein.

100.    Defamation is defined by the invasion of a person's interest in his reputation and good name. Plaintiff would show that Defendants, through the actions of University of Arizona, published false information about Plaintiff (i.e., Plaintiff was terminated for a "poor season") in an attempt to tarnish the reputation of Coach Sumlin's coaching staff.

101.    Coach Aych meets each element in a claim for defamation. The actions taken by the staff at the University of Arizona against Coach Sumlin's football coaching team directly affected and negatively harmed Coach Aych's reputation by putting his character, work ethic and ability to successfully coach into question among the professional football coaching community.

ORIGINAL COMPLAINT

102.   U of A intentionally, knowingly, and/or negligently released and transferred the private information in attempt to terminate Plaintiff under the guise of a "poor season."

103.   As Coach Sumlin's Assistant Coach, Coach Aych is a causality caught in the destructive crossfire between the University of Arizona staff and Coach Sumlin. The unlawful publication of Coach Sumlin's private playbook to an unknown number of unauthorized third parties with the intention it be used to harm Coach Sumlin professionally, which it did so effectively, also harmed Coach Aych's reputation in the community by the direct association to Coach Sumlin.

## **PRAYER**

Plaintiff and similarly situated players be granted judgment against Defendants for all relief allowed by federal statutes, including exemplary damages, compensatory, punitive damages, and attorneys' fees where applicable. Plaintiff respectfully pray that the Defendants be cited to appear and answer, and that upon a final hearing of the cause, judgment be entered for the Plaintiff against Defendants for the damages requested in excess of the minimum jurisdictional limits of the Court, together with prejudgment and post-judgment interest at the maximum rate allowed by law, attorney's fees, court costs and such further relief to which the Plaintiffs may be entitled to at law or in equity, whether pled or unpled.

Dated: September 1, 2023                          Respectfully submitted,





**Alfonso Kennard, Jr**.
Texas Bar No. 24036888
Southern District TX - 713316
**Eddie Hodges Jr**.
Texas Bar No. 24116523
Southern District TX - 3479748

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

5120 Woodway Dr., Suite 10010
Houston, Texas 77056
T: (713) 742-0900
F: (713) 742-0951
alfonso.kennard@kennardlaw.com
eddie.hodges@kennardlaw.com
**LEAD ATTORNEYS FOR
PLAINTIFF PENDING
MOTION FOR *PRO HAC
VICE***

**Jonathan Weiss** (SBN 143895)
Email:  jw@lojw.com
LAW OFFICE OF JONATHAN WEISS
10576 Troon Ave.
Los Angeles, CA  90064-4436
Telephone: (310) 558-0404

**LOCAL OF COUNSEL FOR PLAINTIFF**

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure and L.R. 38-1, Plaintiff demands a trial by jury for all issues so triable.

_____

Alfonso Kennard Jr.

ORIGINAL COMPLAINT