MICHAEL A.S. NEWMAN (SBN 205299)
mnewman@hinshawlaw.com
SARA E. FRANKS (SBN 345940)
sfranks@hinshawlaw.com
Hinshaw & Culbertson LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
Telephone:  213-680-2800
Facsimile:   213-614-7399

Attorneys for Defendants Arizona Board of Regents, on its own behalf, and for and on behalf of the University of Arizona; Dave Heeke; Jedd Fisch; and Jimmie Dougherty

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

THERON AYCH,

           Plaintiff,

    vs.

UNIVERSITY OF ARIZONA; THE ARIZONA BOARD OF REGENTS; NATIONAL COLLEGIATE ATHLETIC ASSOCIATION; UNIVERSITY OF CALIFORNIA, LOS ANGELES; THE REGENTS OF THE UNIVERSITY OF CALIFORNIA, a California Corporation; PACIFIC 12 CONFERENCE; DAVE HEEKE, individually, JEDD FISCH, individually, JIMMIE DOUGHERTY, individually, and DOES 1-10, inclusive,

           Defendants.

Case No. 2:23-cv-07282 ODW(MARx)

**MOTION TO DISMISS PLAINTIFF'S COMPLAINT BY ARIZONA BOARD OF REGENTS, ON ITS OWN BEHALF, AND FOR AND ON BEHALF OF THE UNIVERSITY OF ARIZONA, DAVE HEEKE, JEDD FISCH, AND JIMMIE DOUGHERTY; MEMORANDUM OF POINTS AND AUTHORITIES**

Date: January 22, 2024
Time: 1:30 p.m.
Courtroom: 5D

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

MOTION TO DISMISS
Case No. 2:23-cv-07282 ODW(MARx)
82872\315568378.v1

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:**

PLEASE TAKE NOTICE that on January 22, 2024, at 1:30 p.m., in Courtroom 5D, 5th Floor of the above-entitled Court, located at First Street Courthouse, 350 W. 1st Street, Los Angeles, CA 90012, Defendants Arizona Board of Regents, on its own behalf, and for and on behalf of the University of Arizona (a non-jural entity); Dave Heeke; Jedd Fisch; and Jimmie Dougherty (collectively, "Arizona Defendants") will, and hereby do, move to dismiss this action pursuant to Fed. R. Civ. Proc., Rule 12(b)(1), (2), and (6), on the following grounds:

1) All claims against Arizona Defendants should be dismissed because they are barred under the doctrine of sovereign immunity. Fed. R. Civ. Proc., Rule 12(b)(1).

2) All claims against Arizona Defendants should be dismissed because the Court lacks personal jurisdiction over Arizona Defendants. Fed. R. Civ. Proc., Rule 12(b)(2).

3) All claims against Arizona Defendants should be dismissed because the factual theory upon which the claims are based are fundamentally implausible. Fed. R. Civ. Proc., Rules 12(b)(6).

4) The Second Count for Racketeering should be dismissed because it does not allege facts for which relief can be granted, and because Plaintiff has failed to satisfy the standards for pleading. Fed. R. Civ. Proc., Rules 8, 12(b)(6).

5) The Third Count for Sherman Act violation should be dismissed because it does not allege facts for which relief can be granted, and because Plaintiff has failed to satisfy the standards for pleading. Fed. R. Civ. Proc., Rules 8, 12(b)(6).

6) The Fourth and Fifth Counts for interference should be dismissed because they do not allege facts for which relief can be granted, they are time-barred, and because Plaintiff has failed to satisfy the standards for pleading. Fed. R. Civ. Proc., Rules 8, 12(b)(6).

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

1      7) The Sixth Count for fraud should be dismissed because it does not allege

2  facts for which relief can be granted, and because Plaintiff has failed to satisfy the

3  standards for pleading. Fed. R. Civ. Proc., Rules 8, 9, 12(b)(6).

4      8) The Seventh Count for defamation should be dismissed because it does not

5  allege facts for which relief can be granted, is time-barred, and because Plaintiff has

6  failed to satisfy the standards for pleading. Fed. R. Civ. Proc., Rules 8, 12(b)(6).

7      9) The University of Arizona should be dismissed from this action because it is

8  not a jural entity capable of being sued. Fed. R. Civ. Proc., Rule 12(b)(6).

9      This motion is made following the conference of counsel pursuant to L.R. 7-3

10  which took place on **November 28, 2023**.

11      This motion is based on this Notice of Motion, the attached Memorandum of

12  Points and Authorities, the documents and pleadings on file with this Court, and any

13  oral argument as may be heard at the time of the hearing.

14

15  DATED: <u>December 15, 2023</u>      HINSHAW & CULBERTSON LLP

16                     By: *<u>/s/Michael A.S. Newman</u>*

17                       MICHAEL A.S. NEWMAN
                     SARA E. FRANKS

18                       Attorneys for Defendants Arizona
                     Board of Regents, on its own behalf,

19                       and for and on behalf of the University
                     of Arizona; Dave Heeke; Jedd Fisch;

20                       and Jimmie Dougherty

21

22

23

24

25

26

27

28

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

# **TABLE OF CONTENTS**

**Page(s)**

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................10

I.     INTRODUCTION ..........................................................................................10

II.    RELEVANT ALLEGATIONS OF THE COMPLAINT ................................11

III.   PLAINTIFF'S CLAIMS AGAINST ARIZONA DEFENDANTS FAIL ......13

    A.    Arizona Defendants Have Sovereign Immunity ...................................13

    B.    The Court Lacks Personal Jurisdiction Over Arizona Defendants .......15

    C.    Plaintiff's Claims Fail Substantively ...................................................18

        1.    Plaintiff's Central Theory is Fundamentally Implausible .........18

        2.    The Second Count for Racketeering Fails .................................21

        3.    The Third Count for Sherman Act Violation Fails ....................23

        4.    The Fourth and Fifth Counts for Interference Fail ...................25

        5.    The Sixth Count for Fraud Fails ................................................27

        6.    The Seventh Count for Defamation Fails ..................................29

    D.    The University of Arizona is a Non-Jural Entity, and To the Extent Any Causes of Action Survive, Should be Dismissed ..........................31

IV.    CONCLUSION .............................................................................................32

3

**HINSHAW & CULBERTSON** LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Ansel Adams Publ. Rights Trust v. PRS Media Partners,*
   LLC, 502 Fed. Appx. 659 (9th Cir. 2012)..................................................14, 31

*Ashcroft v. Iqbal,*
   556 U.S. 662 (2009) ...................................................................................*passim*

*Augusta v. United Serv. Auto. Ass'n.,*
   13 Cal.App.4th 4 (1993)........................................................................................25

*Aversano v. Greenberg Traurig, LLP,*
   753 F. Supp. 2d 1063 (C.D. Cal. 2010)..............................................................22

*Bair v. Krug,*
   853 F.2d 672 (9th Cir. 1988) ..............................................................................14

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007) ...................................................................................*passim*

*Bonner v. Med. Bd. of Cal.,*
   2018 U.S. Dist. LEXIS 169492 (E.D. Cal. 2018) ............................................14

*Brantley v. NBC Universal, Inc.,*
   675 F.3d 1192 (9th Cir. 2012)............................................................................23

*Brooks v. Sulphur Springs,*
   951 F.2d 1050 (9th Cir. 1991) ............................................................................13

*Brown v. Allstate Ins. Co.,*
   17 F. Supp. 2d 1134 (S.D. Cal. 1998) ...............................................................26

*Butcher's Union Local No. 498 v. SDC Invest., Inc.,*
   788 F.2d 535 (9th Cir. 1986) ..............................................................................18

*Calder v. Jones,*
   465 U.S. 783 (1984) .............................................................................................16

*California Architectural Bldg. Prod. v. Franciscan Ceramics,*
   818 F.2d 1466 (9th Cir. 1988)............................................................................32

4

**HINSHAW & CULBERTSON** LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

*In re Cascade Int'l Sec. Litig.*,
   840 F. Supp. 1558 (S.D. Fla. 1993) ..................................................................21

*Committe v. Or. State Univ.*,
   2018 U.S. Dist. LEXIS 165308 (D. Or. 2018) ..................................................14

*Cook v. AVI Casino Enters.*,
   548 F.3d 718 (9th Cir. 2008) ............................................................................14

*Costa Serena Owners Coalition v. Costa Serena Architectural Com.*,
   175 Cal.App.4th 1175 (2009) ...........................................................................25

*Credit Bureau Servs., Inc. v. Experian Information Solutions, Inc.*,
   2013 U.S. Dist. LEXIS 94313 (C.D. Cal. June 28, 2013) ................................24

*Eclectic Props. East v. Marcus & Millichap*,
   751 F.3d 990 (9th Cir. 2014) ............................................................................22

*Edwards v. Marin Park, Inc.*,
   356 F.3d 1058 (9th Cir. 2004) ..........................................................................22

*Engalla v. Permanente Med. Group, Inc.*,
   15 Cal. 4th 951 (1997) ......................................................................................28

*Freidman v. Massage Envy Franchising*,
   LLC, 2013 U.S. Dist. LEXIS 84250 (S.D. Cal. 2013) .....................................20

*Gilbert v. DaGrossa*,
   756 F.2d 1455 (9th Cir. 1985) ..........................................................................14

*Gradford v. Gray*,
   2023 U.S. Dist. LEXIS 39740 (E.D. Cal. 2023) ..............................................20

*Grande v. Casson*,
   50 Ariz. 397 (1937) ..........................................................................................31

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984) .........................................................................................15

*Holden v. Target Corp.*,
   2016 U.S. Dist. LEXIS 95490 (N.D. Cal. 2016) ..............................................30

5

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

*Int'l Norcent Technology v. Koninklijke Philips Electronics N.V.*,
   2007 U.S. Dist. LEXIS 89946 (C.D. Cal. 2007) ...............................................24

*International Shoe Co. v. Washington*,
   326 U.S. 310 (1945) .........................................................................................15

*Johnson v. Eckstrom*,
   2011 U.S. Dist. LEXIS 136730 (N.D. Cal. 2011).............................................30

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)....................................................................28, 29

*Kendall v. Visa U.S.A., Inc.*,
   518 F.3d 1042 (9th Cir. 2008).........................................................................24

*Kimbell v. Shofstall*,
   17 Ariz. App. 11 (1972) (State Board of Education cannot sue or be
   sued)..................................................................................................................31

*Korea Supply Co. v. Lockheed Martin Corp.*,
   29 Cal. 4th 1134 (2003)....................................................................................26

*Kulick v. United States Supreme Court*,
   2023 U.S. Dist. LEXIS 179172 (C.D. Cal. 2023) ...........................................23

*League of United Latin Am. Citizens v. Bredesen*,
   500 F.3d 523 (6th Cir. 2007)............................................................................21

*Mullan v. Daniels*,
   2021 U.S. Dist. LEXIS 70871 (N.D. Cal. 2021)..............................................29

*Nelson v. Tucker Ellis, LLP*,
   48 Cal.App.5th 827 (2020).........................................................................26, 27

*Oxbow Carbon & Minerals LLC v. Union Pac. R.R. Co.*,
   926 F.Supp. 2d 36 (D.D.C. 2013)....................................................................24

*Painters & Allied Trades Dist. v. Takeda Pharm. Co. LTD*,
   2023 U.S. Dist. LEXIS 111918 (C.D. Cal. 2023) ...........................................21

*Pennhurst v. Halderman*,
   465 U.S. 89 (1984) ...........................................................................................13

6

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

*Pollard v. Geo Group, Inc.*,
  607 F.3d 583 (9th Cir. 2010) ............................................................................ 18

*Rebel Oil Co., Inc. v. Atl. Richfield Co.*,
  51 F.3d 1421 (9th Cir. 1995) ............................................................................ 25

*Richards v. Duke Univ.*,
  480 F.Supp. 2d 222 (D.D.C. 2007)................................................................... 16

*Ringler Associates v. Maryland Casualty*,
  80 Cal.App.4th 1165 (2000) ............................................................................. 30

*Rogers v. Postmates Inc.*,
  2020 U.S. Dist. LEXIS 36626 (N.D. Cal. 2020).............................................. 19

*Ronwin v. Shapiro*,
  657 F.2d 1071 (9th Cir. 1981) .......................................................................... 14

*Rounds v. Or. State Bd.*,
  166 F.3d 1032 (9th Cir. 1999) .......................................................................... 13

*Rozario v. Richards*,
  2015 U.S. Dist. LEXIS 190466 (C.D. Cal. 2015) ............................................ 19

*Schwarzenegger v. Fred Martin Motor Co.*,
  374 F.3d 797 (9th Cir. 2004) ............................................................................ 15

*Scofield v. Guillard*,
  U.S. Dist. LEXIS 139707 (D. Idaho 2023) ....................................................... 20

*Seelig v. Infinity Broad. Corp.*,
  97 Cal.App.4th 798 (2002)................................................................................ 30

*Sun Sav. & Loan Ass'n v. Dierdorff*,
  825 F.2d 187 (9th Cir. 1987) ............................................................................ 21

*Taus v. Loftus*,
  40 Cal.4th 683 (2007)........................................................................................ 30

*Turner v. Cook*,
  362 F.3d 1219 (9th Cir. 2004)..................................................................... 22, 23

7

*United States v. Miller*,
   953 F.3d 1095 (9th Cir. 2020) ................................................................ 22

*Vanloan v. Nation of Islam*,
   2020 U.S. Dist. LEXIS 128992 (C.D. Cal. 2020) ............................... 20

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (2003) ................................................................ 23, 28

*Weintraub Fin. Servs. v. Boeing Co.*,
   2020 U.S. Dist. LEXIS 202393 (C.D. Cal. 2020) ............................... 26

*Yamamoto v. Santa Cruz County Board of Supervisors*,
   124 Ariz. 538 (App. 1979) ................................................................ 31

**Statutes**

18 U.S.C. § 1341 ................................................................................ 22

18 U.S.C. § 1343 ................................................................................ 22

18 U.S.C § 1621 ................................................................................. 22

19 U.S.C § 1951(a) ............................................................................ 22

18 U.S.C. § 1961(5) ........................................................................... 21

18 U.S.C. § 1965 ............................................................................... 18

A.R.S. § 15-1621, *et seq.* ................................................................ 15

A.R.S. § 15-1625(A) ......................................................................... 31

A.R.S. § 15-1625(B)(3) ..................................................................... 31

Cal. Code Civ. Proc. § 340(c) .......................................................... 29

**Other Authorities**

FRCP, Rule 9 ..................................................................... 23, 28, 29

FRCP, Rule 9(b) ....................................................................... 23, 28

FRCP, Rule 12(b)(1) ......................................................................... 15

8

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

MOTION TO DISMISS
Case No. 2:23-cv-07282 ODW(MARx)
82872\315568378.v1

FRCP, Rule 12(b)(6).................................................................................18

FRE 201 ...................................................................................................17

9

**HINSHAW & CULBERTSON** LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

In his Complaint against Arizona Defendants,[1] Plaintiff Theron Aych ("Plaintiff" or "Aych") employs a sparse scaffolding of alleged facts to support an extraordinarily implausible conspiracy theory – i.e., that a university deliberately caused its own football team to lose, possibly over the course of multiple seasons, merely in order to create a pretext for terminating a coach.

First the facts. From 2017 to 2020, Plaintiff was part of the coaching staff at the University of Arizona football team, working under head coach Kevin Sumlin ("Sumlin"). During the 2018-2020 college football seasons, the team had a losing record. The entire coaching staff, including Plaintiff, was terminated in 2020. Soon after the termination, the University hired Fisch as new head football coach, and Dougherty was hired along with him as head assistant coach. On his first day at Arizona, Dougherty handed a thumb drive to another assistant coach, who found on the drive what appeared to include Sumlin's playbook and other Arizona team documents. Complaint, ¶¶ 34-44.

Moving on to speculative theories, Plaintiff entirely ignores more plausible explanations for the above facts – for example, that on arriving for his first day of work at the University, Dougherty downloaded the playbook and other documents from Arizona's computer system to the thumb drive he brought with him, and *then* gave the thumb drive to the assistant. Instead, Plaintiff concocts the most fanciful and *implausible* theory possible – i.e., that Arizona Defendants conspired to leak Sumlin's

---

[1] "Arizona Defendants" refers to the moving parties– i.e., Arizona Board of Regents, on its own behalf, and for an on behalf of the University of Arizona (collectively "ABOR"), Dave Heeke ("Heeke"); Jedd Fisch ("Fisch"); and Jimmie Dougherty ("Dougherty") (Heeke, Fisch and Dougherty are "Individual Defendants"). As discussed herein, the University of Arizona ("University") is not a jural entity. *See* Section III.D.

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

playbook to competing teams in order to engineer their **own** team's defeat, all in order to create a pretext for firing a coach and his staff.  Sports teams lose all the time, and coaches are commonly fired for failing to deliver victories. But if there is one thing that is frankly inconceivable, it is that a university would deliberately cause its own team to lose for even one game, let alone one or more seasons, for any reason.

As the U.S. Supreme Court held in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ("*Iqbal*"), the Court should not accept implausible (let alone outlandish) theories built upon a bare minimum of facts. Where, "given more likely explanations," the facts do not "plausibly establish" the theories, the Court must reject them. *Iqbal*, *supra* at 681-682. The alleged facts do not come close to "plausibly establish[ing]" that ABOR (or its functionaries) deliberately engineered the defeat of its own team simply in order to create a pretext for firing a coach.

This is not the only problem with the Complaint – not by far. Indeed, the Complaint fails as against the Arizona Defendants for a host of other reasons as well. For one thing, under the Eleventh Amendment, the Arizona Defendants all have sovereign immunity. Likewise, the Court lacks personal jurisdiction over the Arizona Defendants. Additionally, each and every claim fails substantively – Plaintiff's RICO, Sherman Act, Interference, fraud, and defamation claims all suffer from fatal and largely insurmountable defects, discussed herein.

In short, Plaintiff's Complaint is fatally flawed in every conceivable way – implausible in its basic premise, and deficient in detail. The instant motion should be sustained without leave to amend.

## II.    RELEVANT ALLEGATIONS OF THE COMPLAINT

The factual nexus upon which all of Plaintiff's allegations are based is as follows.[2]

---

[2] In reciting them, Defendants do not admit the truth of Plaintiff's allegations.

11

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

MOTION TO DISMISS
Case No. 2:23-cv-07282 ODW(MARx)
82872\315568378.v1

Plaintiff was an assistant coach for the University football team, and Sumlin was the head coach. Complaint, ¶¶ 1, 34-35. For reasons Plaintiff never explains, ABOR was "disgruntled" with and wanted to fire Sumlin. Complaint, ¶ 38

So why didn't ABOR simply fire him? We are not told. Rather, per Plaintiff's theory, ABOR opted to terminate its coaching staff in the most self-defeating and self-destructive manner it could possibly devise – that is, by purposefully transferring Sumlin's private playbook to opposing college football teams, causing the team to lose, possibly over a multi-season period. Complaint, ¶¶ 2-3, 50.

Plaintiff alleges that unidentified "unknown actors" or "internal figures within the University of Arizona" released Sumlin's playbook to opposing teams, with the intent of damaging the coaching reputation of Coach Sumlin and his staff. Complaint, ¶¶ 32-33, 44. During the 2018-2020 college football seasons, the University had a losing record, and the entire coaching staff, including Plaintiff, was terminated after the 2020 season due to a "poor season." Complaint, ¶ 37.

Heeke is athletic director of the University, and has been since 2017. Complaint, ¶ 22. Eleven days after terminating the coaching staff, ABOR hired Fisch as new head football coach, which according to Plaintiff is an unusually short period. Complaint, ¶ 39.

Fisch announced Dougherty as his head assistant coach. During his first day on the job at the University, January 5, 2021, Dougherty handed a thumb drive to another assistant coach, which contained a call sheet that looked like the one used by the University, as well as what appeared to be Sumlin's playbook. Complaint, ¶¶ 41-44.

Separating speculation from factual assertion, there are only four core facts that Plaintiff alleges: (a) The team performed poorly in the 2018-2020 seasons; (b) the coaching staff was terminated, purportedly because of the team's poor performance; (c) the replacement coach (Fisch) was hired soon after the termination; and (d) on his first day on the job, the replacement head assistant coach (Dougherty) handed an

12

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

MOTION TO DISMISS
Case No. 2:23-cv-07282 ODW(MARx)
82872\315568378.v1

assistant on the team a thumb drive that appeared to contain Sumlin's playbook on it. These are the only pertinent *facts* alleged. Everything Plaintiff builds upon these alleged facts are conclusory allegations containing nothing more than unsupported and fanciful  speculation.

In the end, this whole lawsuit hinges on the absolutely unsupported speculation ("[u]pon information and belief") that "internal figures" or "unknown actors within the University of Arizona" decided to torpedo their own team, possibly over multiple seasons, by leaking the team's playbook to competitor teams. Complaint, ¶¶ 32, 44, 50.

## III.   PLAINTIFF'S CLAIMS AGAINST ARIZONA DEFENDANTS FAIL

### A.   Arizona Defendants Have Sovereign Immunity

Setting aside Plaintiff's theories, Arizona Defendants have immunity, and thus must be dismissed for this reason alone. The Eleventh Amendment to the United States Constitution provides, "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

The Supreme Court has consistently interpreted the Eleventh Amendment to bar any suit in federal court by private individuals against a state or its entities, regardless of the kind of relief sought, absent unequivocal consent by the state or the unequivocal abrogation of immunity by act of Congress. *Pennhurst v. Halderman*, 465 U.S. 89, 100 (1984); *Brooks v. Sulphur Springs*, 951 F.2d 1050, 1053 (9th Cir. 1991)("The Eleventh Amendment's jurisdictional bar covers suits naming state agencies and departments as defendants, and applies whether the relief sought is legal or equitable in nature.") Public universities are entitled to sovereign immunity. *Rounds v. Or. State Bd.*, 166 F.3d 1032, 1035 (9th Cir. 1999) (university is an "arm of the [state] for Eleventh Amendment immunity purposes."). A state's waiver of

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

sovereign immunity in its own courts does not waive its Eleventh Amendment immunity in federal courts. *Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir. 1981).

The Ninth Circuit explicitly held in *Ansel Adams Publ. Rights Trust v. PRS Media Partners,* LLC, 502 Fed. Appx. 659, 660 (9th Cir. 2012) that ABOR is entitled to sovereign immunity. *Id*. at 660. Neither of the exceptions to Eleventh Amendment immunity noted above exist in this case. First, none of the Arizona Defendants have waived Eleventh Amendment immunity; indeed, by this motion, they are asserting it. Second, as to the RICO and anti-trust counts, the only two counts arising under Federal Law, Congress has never expressed the intention to abrogate sovereign immunity. *Bair v. Krug,* 853 F.2d 672, 674-75 (9th Cir. 1988) (Congress did not abrogate states' sovereign immunity under RICO); *Bonner v. Med. Bd. of Cal.,* 2018 U.S. Dist. LEXIS 169492, *14 (E.D. Cal. 2018) ("Congress did not abrogate state sovereign immunity in enacting the Sherman Act or the Clayton Act.") All of the other counts arise under state law, so there is no question of congressional intent to abrogate state immunity as to those claims. In short, sovereign immunity bars this action in its entirety as to ABOR.[3]

Furthermore, sovereign immunity extends not merely to public university systems and their boards, but to their employees. *Cook v. AVI Casino Enters*., 548 F.3d 718, 727 (9th Cir. 2008) ("[W]e have extended federal sovereign immunity to employees of" governmental entities); *Gilbert v. DaGrossa*, 756 F.2d 1455, 1458 (9th Cir. 1985) ("[S]overeign immunity cannot be avoided by naming officers and employees" of governmental entities as defendants.); *Committe v. Or. State Univ*., 2018 U.S. Dist. LEXIS 165308, *2 (D. Or. 2018). Here, the Individual Defendants are all employees of the ABOR and the claims against them arise in connection with

---

[3] As discussed herein, the University is not a jural entity. See Section III.D. However, if the University was a proper defendant, sovereign immunity would apply to it as well, for the same reasons.

14

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

MOTION TO DISMISS
Case No. 2:23-cv-07282 ODW(MARx)
82872\315568378.v1

1  that employment (Complaint, ¶¶ 22-24, 39-44).  As such, this Court has no subject

2  matter jurisdiction over this case as to Arizona Defendants. Fed. R. Civ. Proc., Rule

3  12(b)(1). This lawsuit should be dismissed for this reason alone.

**B.**     **The Court Lacks Personal Jurisdiction Over Arizona Defendants**

1.     The Court Lacks Personal Jurisdiction Over ABOR

6      California's long-arm statute governs the jurisdictional analysis for the claims

7  against ABOR. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800-

8  01 (9th Cir. 2004) ("Because California's long-arm jurisdictional statute is

9  coextensive with federal due process requirements, the jurisdictional analyses under

10  state law and federal due process are the same"). Plaintiff bears the burden of

11  demonstrating personal jurisdiction and must show that the Arizona Defendants have

12  sufficient "'minimum contacts' with the relevant forum such that the exercise of

13  jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"

14  *Id.* at 800; *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945).

15      Personal jurisdiction takes the form of specific or general jurisdiction.

16  *Schwarzenegger*, 374 F.3d at 801-02. General jurisdiction is an exacting standard and

17  requires that "the defendant [] engage in 'continuous and systematic general business

18  contacts'" that constitutes "approximate physical presence in the forum state." *Id.* at

19  801; *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416 (1984).

20  A specific personal jurisdiction analysis utilizes a three-prong test: 1) the nonresident

21  defendant purposefully directed its activities towards or purposefully availed itself of

22  the privilege of conducting activities in the forum state; 2) the claim arises out of or

23  relates to the nonresident defendant's forum-related activities; and 3) the exercise of

24  jurisdiction comports "with fair play and substantial justice." *Schwarzenegger*, 374

25  F.3d at 802.

26      ABOR is a legislatively created Arizona entity which conducts business in and

27  works on behalf of the state of Arizona. *See* A.R.S. § 15-1621, *et seq*. There is no

28

**HINSHAW & CULBERTSON** LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

plausible allegation that ABOR is subject to general jurisdiction in California (and Plaintiff makes none). Further, universities have been found to not subject themselves to personal jurisdiction in states they are not located. *Richards v. Duke Univ.*, 480 F.Supp. 2d 222, 230 (D.D.C. 2007) ("[g]enerally, colleges and universities are not subject to personal jurisdiction in all states from which their students hail, as this would unfairly expose them to litigation in many distant forums"). Plaintiff cannot establish general jurisdiction.[4]

Plaintiff also cannot establish specific jurisdiction. Plaintiff does not plead that ABOR purposefully availed itself of the benefits of conducting business in California. In his single paragraph regarding jurisdiction, Plaintiff simply states that the acts alleged in the complaint occurred within the Central District of California. Complaint ¶ 12. But the termination of Plaintiff occurred in Arizona, and the alleged leak (for which no supporting facts are proffered) also purportedly occurred in Arizona (Complaint, ¶¶ 32, 44). Further, the purposeful activity must target the forum state itself. *See Austin*, 2021 U.S. Dist. LEXIS 131342 at * 9-10 ("[p]ersonal jurisdiction depends upon the nature and quality of the defendant's contacts and whether the forum state was the focus of defendants' activities and their effects"); *Calder v. Jones*, 465 U.S. 783, 789 (1984). The playbook's alleged distribution occurred throughout the Pac-12 and NCAA, and Plaintiff was terminated in Arizona. This involves several states; such alleged conduct was not particularly directed towards California. Complaint, ¶ 2.

Additionally, the alleged conduct by ABOR occurred within Arizona. Per Plaintiff's theories, the playbook was sent by ABOR in Arizona. It did not occur in

---

[4] Again, the University is not a jural entity. See Section III.D. And again, if the University was a proper defendant, the personal jurisdictional defenses discussed here would apply to it as well, for the same reasons.

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

California and was not directed at California, but nationwide. There is no connection between California and the alleged activity.

Finally, it would not comport with fair play and substantive justice to find personal jurisdiction here. ABOR did not avail itself of the laws or benefits of California, does not conduct its business in California, and did not take any action which would have alerted it to the possibility of being sued anywhere other than Arizona. Specific jurisdiction cannot be established.

2.    The Court Lacks Personal Jurisdiction Over the Individual Defendants

There is also no personal jurisdiction over the Individual Defendants under the minimum contacts test. None of the Individual Defendants are alleged to be domiciled in or have continuous contacts with California that subject them to general jurisdiction. Heeke has resided and worked in Arizona since 2017. (Complaint, ¶ 22). Fisch and Dougherty currently reside and work in Arizona, and have since 2021.[5] (Complaint, ¶ 40).

There are also no allegations that the Individuals Defendants purposefully directed any conduct or availed themselves of the benefits of conducting business in California. As noted above, the alleged conduct originated and was based in Arizona, not California. The playbook was allegedly distributed throughout the country, not just California. There is no particular connection between the alleged conduct and California. Finally, it would not comport with fair play and substantive justice to find personal jurisdiction in California, as the alleged conduct originated in Arizona and none of the Individual Defendants are residents of California or direct their activities there in a manner which would satisfy the minimum contacts required to establish personal jurisdiction.

_____

[5] Fisch coached at UCLA **only** in the year 2017, not in 2018-2020, as alleged in the Complaint, a fact that is independently verifiable and subject to judicial notice.  FRE 201. See https://arizonawildcats.com/staff-directory/jedd-fisch/1529

17

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

3.     RICO Does Not Establish Personal Jurisdiction

Plaintiff claims that there is personal jurisdiction over defendants in this action under 18 U.S.C. § 1965 of RICO. In 18 U.S.C. § 1965, "Congress provided for service of process upon RICO defendants residing outside the federal court's district when it is shown that 'the ends of justice' require it." *Butcher's Union Local No. 498 v. SDC Invest., Inc.*, 788 F.2d 535, 538 (9th Cir. 1986). However, the Ninth Circuit determined that this statute does *not* provide automatic nationwide jurisdiction over all defendants. *Id.* at 538-39. Instead, the Ninth Circuit held, "[a]s section 1965(b) makes clear, the right to nationwide service in RICO suits is not unlimited" and the "court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators" in order to establish a right to nationwide service. *Id.* at 539. Plaintiff can establish neither here.

None of the Individual Defendants, the only defendants included in the RICO claim, are subject to personal jurisdiction in California. There is also another district that all the Individual Defendants would be subject to personal jurisdiction – Arizona. Plaintiff cannot establish personal jurisdiction over the Arizona Defendants through his RICO claims.

**C.     Plaintiff's Claims Fail Substantively**

1.     Plaintiff's Central Theory is Fundamentally Implausible

On a motion under Rule 12(b)(6), the court must accept as true all properly pled factual allegations in the complaint. *Pollard v. Geo Group, Inc.,* 607 F.3d 583, 585 n.3 (9th Cir. 2010). However, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (Citation omitted). "Nor does a complaint suffice if it tenders **naked assertions devoid of further factual enhancement**." *Iqbal, supra* at 678 (quoting *Twombly,* 550

18

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

MOTION TO DISMISS
Case No. 2:23-cv-07282 ODW(MARx)
82872\315568378.v1

U.S. at 557) (emphasis added). All of Plaintiff's claims are based on a single naked assertion (Para. 32, 44) that is devoid of and not supported by a single factual enhancement. "Factual allegations must be enough to raise a right to relief above the speculative level ...." *Twombly*, 550 U.S. at 555 (citations omitted). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557. A complaint "must be dismissed" if the factual allegations do not "nudge[]" the "claims across the line from conceivable to plausible." *Twombly*, *supra* at 569.

Plaintiff's Complaint is more fatally flawed than the complaint in *Iqbal*. In *Iqbal,* the plaintiff, an Arab Muslim, alleged that he was detained because of his race, religion, and/or national origin, and in particular that the Attorney General had adopted its detention policy "'because of,' not merely 'in spite of,' its adverse effects upon an identifiable group." *Id.* at 680. The Supreme Court held that the allegations, while **consistent** with a discriminatory intent, were nonetheless insufficient given **other equally or more likely explanations for his actions**. *Id.* at 681-682 ("Taken as true, these allegations are consistent with petitioners' purposefully designating detainees 'of high interest' because of their race, religion, or national origin. ***But given more likely explanations, they do not plausibly establish this purpose***.") (emphasis added)  As the Supreme Court reasoned, since the September 11 attacks were perpetrated by Arab Muslin hijackers, it would come as no surprise that a legitimate detention policy "would produce a disparate, incidental impact on Arab Muslims, even though the purpose of the policy was to target neither Arabs nor Muslims." *Id.* at 682. Thus, on the facts alleged, Iqbal's claim was properly dismissed.

Consistent with this, courts in the Ninth Circuit routinely dismiss cases that offer speculation or conjecture that are objectively implausible. *See Rozario v. Richards*, 2015 U.S. Dist. LEXIS 190466, *17 (C.D. Cal. 2015) (finding that "inconceivable conjecture does not pass the *Iqbal-Twombly* threshold"); *Rogers v.*

19

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

*Postmates Inc.*, 2020 U.S. Dist. LEXIS 36626, *16 (N.D. Cal. 2020)(plaintiff cannot "make it through a challenge to the pleadings armed with nothing more than conclusory allegations and speculation . . .")*; Freidman v. Massage Envy Franchising*, LLC, 2013 U.S. Dist. LEXIS 84250, *6 (S.D. Cal. 2013) (dismissing claims that "do nothing more than assert a speculation.")*; Gradford v. Gray*, 2023 U.S. Dist. LEXIS 39740, *17 (E.D. Cal. 2023) ("Plaintiff's speculation is insufficient to state a cognizable claim.")

Here, Plaintiff's theories are not just speculative and implausible – they are not ***even conceivable****. See Vanloan v. Nation of Islam*, 2020 U.S. Dist. LEXIS 128992, *8 (C.D. Cal. 2020)(dismissing claims that "are far too fanciful and bizarre to state a plausible legal claim.")*; Scofield v. Guillard,* U.S. Dist. LEXIS 139707, *12-13 (D. Idaho 2023) (dismissing claims that are "arguably so outrageous as to be clearly baseless and, thus, implausible.").

If there is one truth universally acknowledged, it is that universities want their teams to ***win****, not ****lose***. Yet Plaintiff's theory is that ABOR deliberately sabotaged its own team, possibly over three consecutive seasons (Complaint, ¶ 50); and that Heeke, the athletic director, deliberately undermined his own position at Arizona by causing the team to lose so that it could fire a coach that he hired three years earlier. Plaintiff could, on the exact same nexus of facts, have alleged that Sumlin ***himself*** leaked the playbook to competitor teams so that he would be fired, in an effort to get out of his contract with ABOR. Is this any more absurd and implausible than Plaintiff's speculations?

Further, Plaintiff does not even plausibly allege that the playbook was leaked in the first place, since he ignores more plausible explanations for the facts he describes – for example, that the first thing Dougherty did when he arrived at his new job at the University was to download Arizona documents to the thumb drive, ***before*** handing the drive to the assistant. Even if there had been a leak, it would be far more

20

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

plausible that someone outside the University hacked its computer system in order to steal the playbook than that ABOR or its agents deliberately leaked it, sabotaging their own team. In the end, Plaintiff purports to pose *questions* – i.e., speculations – but very few facts. *See, e.g.,* Complaint, ¶32 ("internal figures" are at fault), ¶44 ("unknown actors" plotted against Plaintiff), ¶45 ("[t]he question remains how long Dougherty had possession of the thumb drive."), ¶69 ("it is possible" mail or wire fraud occurred). *See League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007)(Pleadings must "do more than create speculation or suspicion of a legally cognizable cause of action . . . .") (citing *Twombly*, 550 U.S. at 555).

As ABOR's deliberate leaking of the playbook is the entire basis of each and every claim in this lawsuit, it follows that each and every claim fails under the *Iqbal*/*Twombly* standard for this reason alone.

Furthermore, as noted in the following sections, Plaintiff also fails to satisfy the elements for each cause of action.

## 2.   The Second Count for Racketeering Fails

"To demonstrate a civil RICO violation, 'a plaintiff must prove that the defendant engaged in (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.'" *Painters & Allied Trades Dist. v. Takeda Pharm. Co. LTD*, 2023 U.S. Dist. LEXIS 111918, *22 (C.D. Cal. 2023). "[A]t a minimum, the plaintiffs must allege sufficient facts with enough specificity to show probable cause that the predicate acts were committed." *In re Cascade Int'l Sec. Litig.*, 840 F. Supp. 1558, 1582 (S.D. Fla. 1993).

To plead a pattern of racketeering activity, at least two predicate acts must be alleged. 18 U.S.C. § 1961(5); *Sun Sav. & Loan Ass'n v. Dierdorff*, 825 F.2d 187, 191-94 (9th Cir. 1987). "A pattern of racketeering activity also requires proof that the racketeering predicates are related and that they amount to or pose a threat of

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

1   *continued criminal activity*." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004)
2   (emphasis added).

3       Predicate acts "consist[] of acts that are indictable under certain specified
4   provisions of Title 18 of the United States Code, including mail and wire fraud."
5   *Aversano v. Greenberg Traurig, LLP*, 753 F. Supp. 2d 1063, 1066 (C.D. Cal. 2010).
6   The mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343, "contain three
7   elements: (A) the formation of a scheme to defraud, (B) the use of the mails or wires
8   in furtherance of that scheme, and (C) the specific intent to defraud." *Eclectic Props.*
9   *East   v. Marcus & Millichap*, 751 F.3d 990, 997 (9th Cir. 2014) (citing *Schreiber*
10  *Distrib. Co. v. Serv-Well Furniture*, 806 F.2d 1393, 1399 (9th Cir.1986)). Wire or
11  mail fraud require "the intent to deceive and cheat—in other words, to deprive the
12  victim of money or property by means of deception." *United States v. Miller*, 953 F.3d
13  1095, 1103 (9th Cir. 2020). A RICO claim predicated on mail or wire fraud is subject
14  to Rule 9(b)'s heightened pleading standards for fraud. *See Edwards v. Marin Park,*
15  *Inc.*, 356 F.3d 1058, 1065-66 (9th Cir. 2004).

16      Plaintiff does not even come close to satisfying any of these requirements.
17  Plaintiff's allegations of conspiracy are entirely conclusory (Complaint, ¶ 68), and he
18  does not explain how any of the Individual Defendants participated in any scheme.
19  As for predicates, Plaintiff generically states that Individual Defendants participated
20  in a scheme to defraud Plaintiff by committing "predicate acts against Plaintiff
21  including but not limited to: § 1621 and§ 1951(a)." Plaintiff further alleges "*it is*
22  *possible*" Defendants employed the mail or wire in violation of 18 U.S.C. § 1341 and
23  1343. Complaint, ¶ 69 (emphasis added).

24      This is the very definition of generic and conclusory pleading, in stark violation
25  of the pleading standards discussed in *Iqbal* and *Twombly*. Plaintiff is just naming
26  code sections, but not alleging any conduct. Although 18 USC 1621 refers to perjury,
27  Plaintiff makes no allegation of perjury. While 19 USC 1951(a) refers to interference

28                                      22

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

MOTION TO DISMISS
Case No. 2:23-cv-07282 ODW(MARx)
82872\315568378.v1

with commerce by threats of violence, Plaintiff makes no allegations of such interference by threat of force. Plaintiff makes no allegation whatsoever of fraud through the mail or wires ("it is ***possible***" it happened, he states), nor does he even attempt to fulfill the specificity requirements of Rule 9 for fraud. *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (2003) (Rule 9(b) requires Plaintiff to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how" of the alleged fraudulent conduct.) As *Iqbal* and *Twombly* tell us, merely asserting formulaic allegations is not enough. *Iqbal*, *supra* at 678; *Twombly supra*, at 569. Plaintiff does not allege facts supporting the notion that there are "racketeering predicates [that] amount to or pose a threat of continued criminal activity." *Turner v. Cook*, 362 F.3d 1219, 1229 (9th Cir. 2004). Plaintiff does not point to any criminal activity at all, let alone point to a threat of continued criminal activity. *Kulick v. United States Supreme Court*, 2023 U.S. Dist. LEXIS 179172, *4 (C.D. Cal. 2023).

### 3.    The Third Count for Sherman Act Violation Fails

Section 1 of the Sherman Antitrust Act prohibits "[e]very contract, combination . . ., or conspiracy, in restraint of trade or commerce." 15 U.S.C. § 1. To state a claim under Section 1, a plaintiff must allege (1) the existence of a contract, combination, or conspiracy among two or more persons or distinct business entities; (2) that defendants intended to harm or retrain trade or commerce; (3) that defendants' actions resulted in an injury to competition; and (4) that the plaintiff suffered causal "antitrust injury" flowing from the defendants' anticompetitive behavior. *Brantley v. NBC Universal, Inc*., 675 F.3d 1192, 1197 (9th Cir. 2012).

**Insufficient allegations of conspiracy**: In *Twombly*, the Supreme Court found allegations that the defendants had "entered into a contract, combination or conspiracy to prevent competitive entry in their . . . markets and have agreed not to compete with

23

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

MOTION TO DISMISS
Case No. 2:23-cv-07282 ODW(MARx)
82872\315568378.v1

1    one another" inadequate to survive a motion to dismiss because the pleading failed to

2    allege evidentiary facts which could prove the conspiracy. *Twombly*, 550 U.S. at 551.

3        As explained in *Kendall v. Visa U.S.A., Inc*., 518 F.3d 1042 (9th Cir. 2008), "to

4    allege an agreement between antitrust co-conspirators, the complaint must allege facts

5    such as a 'specific time, place, or person involved in the alleged conspiracies' to give

6    a defendant seeking to respond to allegations of a conspiracy an idea of where to

7    begin." *Id*. At 1047. In *Kendall*, the panel affirmed a dismissal of the antitrust pleading

8    that failed to answer "the basic questions: who, did what, to whom (or with whom),

9    where and when?" *Id.* At 1048. *See also, Oxbow Carbon & Minerals LLC v. Union

10   Pac. R.R. Co.,* 926 F.Supp. 2d 36, 47 (D.D.C. 2013) (dismissing antitrust complaint

11   that "lack[ed] factual allegations about how the alleged agreement came about, the

12   basic terms of the agreement itself or how the defendants used the agreement to

13   monopolize the . . . market."); *see also, Credit Bureau Servs., Inc. v. Experian

14   Information Solutions, Inc*., 2013 U.S. Dist. LEXIS 94313, at *14-15 (C.D. Cal. June

15   28, 2013); *Int'l Norcent Technology v. Koninklijke Philips Electronics N.V.,* 2007

16   U.S. Dist. LEXIS 89946, at *43 (C.D. Cal. 2007).

17       Plaintiff's complaint utterly fails to provide any such factual context.  Rather,

18   Plaintiff conclusorily alleges that Individual Defendants "have conspired to create

19   competitive restraints by exposing, transferring, and releasing the private playbook of

20   U of A Coach Sumlin." Complaint, ¶ 74. Plaintiff nowhere describes anything about

21   the conspiracy, let alone how each Individual Defendant participated, or "the basic

22   questions: who, did what, to whom (or with whom), where and when?" *Kendall*, *supra*

23   at 1048.

24       **Insufficient allegation of injury to competition:** Plaintiff's Section 1 claim

25   should also be dismissed because Plaintiff has not pled an injury to competition. "[A]n

26   act is deemed *anticompetitive* under the Sherman Act only when it harms both

27   allocative efficiency and raises the prices of goods above competitive levels or

28

diminishes their quality." *Rebel Oil Co., Inc. v. Atl. Richfield Co*., 51 F.3d 1421, 1433 (9th Cir. 1995)(emphasis in original). Here, although Plaintiff asserts platitudes aimed at satisfying this requirement (*see* Complaint, ¶ 80) he does not actually explain how the team experiencing a losing season, or replacing its coach, harms allocative efficiency, raises prices above competitive levels, or diminishes the quality of the product. Sports teams lose all the time – literally, someone **has** to lose. Teams have bad seasons. Coaches are replaced all the time. Plaintiff does not explain how this results in the harms discussed in *Rebel Oil*.

### 4.   The Fourth and Fifth Counts for Interference Fail

**Statute of Limitations**: The statute of limitations for interference (whether it be intentional or negligent) is two years. *Augusta v. United Serv. Auto. Ass'n*., 13 Cal.App.4th 4, 8 (1993). Plaintiff's claims accrued at the time of Plaintiff's termination. *Costa Serena Owners Coalition v. Costa Serena Architectural Com*., 175 Cal.App.4th 1175, 1195-1196 (2009) ("As a general rule, a statute of limitations . . . when 'the plaintiff sustains actual and appreciable harm. [Citation.] (citations omitted). Plaintiff alleges he was terminated in 2020 (Complaint, ¶ 50), and the affidavit attached to the Complaint was executed on April 22, 2021, over two years ago. *See* Marinelli Affidavit. Thus, even if the discovery rule applied, more than two years have passed since Plaintiff could have become aware of basis of his claim, such as it is. This case was filed on September 1, 2023, more than two years after any claim could have accrued. Thus, the fourth and fifth count are time-barred.

**Substantive failure**: The claims fail substantively as well. The elements of intentional interference with prospective economic advantage are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the  relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

proximately caused by the acts of the defendant.'" *Westside Center Associates v. Safeway Stores 23*, Inc., 42 Cal.App.4th 507, 521-522 (1996) (citation omitted). Negligent interference involves the same elements, except instead of the third element, Plaintiff must prove "the defendant's knowledge (actual or construed) that the relationship would be disrupted if the defendant failed to act with reasonable care" and "the defendant's failure to act with reasonable care." *Nelson v. Tucker Ellis, LLP*, 48 Cal.App.5th 827, 844, n. 5 (2020))

As to the first element, alleging the existence of an economic relationship or advantage requires alleging "a 'particular relationship or opportunity with which the defendant's conduct is alleged to have interfered' rather than vague allegations regarding a relationship with an 'as yet unidentified' customer." *Weintraub Fin. Servs. v. Boeing Co.,* 2020 U.S. Dist. LEXIS 202393, *8 (C.D. Cal. 2020). Courts have held that a tortious interference claim that rests on "a hope of future transactions" is insufficient to support a claim of tortious interference. *Brown v. Allstate Ins. Co.*, 17 F. Supp. 2d 1134, 1140 (S.D. Cal. 1998) ("[p]laintiff must establish an actual economic relationship or a protected expectancy with a third person, not merely a hope of future transactions"). To establish economic relationship a plaintiff must allege not just "an economic relationship between the plaintiff and some third party" but also the "probability of future economic benefit to the plaintiff." *Korea Supply Co. v. Lockheed Martin Corp*., 29 Cal. 4th 1134, 1153 (2003).

Here, Plaintiff merely alleges that defendants knew about his "efforts to market himself as a highly valued football coach" (Complaint, ¶¶ 85, 91) and that defendants' acts were "designed to disrupt Plaintiffs ability to market himself within future contractual relationship." Complaint, ¶¶ 86, 92). In other words, Plaintiff had nothing more than "a hope of future transactions." Plaintiff does not allege a "particular relationship or opportunity," or "actual economic relationship," let alone that such

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

"advantage would have been realized but for defendant's interference." As such, Plaintiff fails to allege the first element for the fourth and fifth counts.

As to the second element, Plaintiff does not allege "defendant's knowledge of the relationship," but only knowledge of marketing efforts. There was no "relationship" for Defendants to know about. Thus, Plaintiff fails to allege the second element.

As to the third element of intentional interference, Plaintiff does not allege "intentional acts on the part of the defendant[s] designed to disrupt the relationship," – first because there was no relationship to disrupt; second, because the whole idea that ABOR deliberately leaked the playbook is implausible on its face (as discussed *supra*); and finally because the allegation that "unknown actors within the University of Arizona . . . . disseminated proprietary information" (Complaint, ¶ 47) is not enough information to impute such conduct to ABOR. As to negligent interference, Plaintiff similarly does not allege ABOR's knowledge "that the relationship would be disrupted if the defendant failed to act with reasonable care." *Nelson v. Tucker Ellis, LLP*, *supra* at 844. Moreover, Plaintiff also does not allege "the defendant's failure to act with reasonable care" – since as discussed above, there was no relationship to disrupt, the leaked playbook conspiracy is implausible, and it is impossible to tell whether the Board can be vicariously liable for the "unknown actors within the University of Arizona."

As to the fourth element, Plaintiff has not alleged "actual disruption of the relationship" because Plaintiff has not alleged the existence of a relationship in the first place – just a speculative hope for future relationships.

For these reasons, the interference claims all fail.

### 5.   The Sixth Count for Fraud Fails

The elements of a cause of action for fraud in California are: "(a) misrepresentation (false representation, concealment, or nondisclosure); (b)

27

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

knowledge of falsity (or 'scienter'); (c) intent to defraud, i.e., to induce reliance; (d) justifiable reliance; and (e) resulting damage." *Engalla v. Permanente Med. Group, Inc.*, 15 Cal. 4th 951, 974 (1997). A fraud claim must be pleaded with the particularity required by Federal Rule of Civil Procedure 9(b). *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103 (2003). "Rule 9(b) demands that the circumstances constituting the alleged fraud be 'specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.'" *Kearns v. Ford Motor Co*., 567 F.3d 1120, 1124 (9th Cir. 2009). Rule 9(b) requires Plaintiff to "state with particularity the circumstances constituting fraud or mistake," including "the who, what, when, where, and how" of the alleged fraudulent conduct. *Vess*, 317 F.3d at 1106 (*quoting Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). In addition, Plaintiff "must set forth what is false or misleading about a statement, and why it is false." *Id*. (citation omitted).

What constitutes the misrepresentation is unclear, but Plaintiff appears to identify the following: (1) the alleged failure to disclose the intention to release the playbook (Complaint, ¶ 96), (2) public statements that Plaintiff was terminated due to a "poor season" (id.), and (3) Plaintiff's termination "on [sic] a duplicitous way" (id.) (which seems to be the same as (2)). Again, as this cause of action (like all the others) is based on the fundamentally implausible and speculative conspiracy theory that ABOR engineered the defeat of its own team over multiple seasons to create a pretext for firing the team's coaching staff, it should be dismissed for this reason alone.

Plaintiff also fails to satisfy the heightened pleading requirements for fraud. While Plaintiff purports to provide "the who, what, when, where, and how" as follows, he, in fact, fails to do so.

Plaintiff defines "**Who**" as ABOR (and that ABOR represented that the playbook would remain confidential and protect Plaintiffs' best interests. (Complaint, ¶ 98, i). But the "who" in the Rule 9 analysis requires identification of a specific

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

individual who made the fraudulent statement, not an entity. *Kearns*, *supra* at 1126 (affirming dismissal of fraud claim where plaintiff alleged a fraudulent statement by Ford Motor Co, but did not "specify who [at Ford] made this statement or when this statement was made.")

Plaintiff identifies "**what**" by describing the "X-Drive" containing the private playbook. (Complaint, ¶ 98, ii).  The "what" in Rule 9 analysis refers to *what the misrepresentation was*. *Kearns*, *supra* at 1126. Plaintiff does not describe this.

Plaintiff identifies "**when**" by indicating that the "X-Drive" was transferred to Pac-12 and NCAA institutions "sometime before the 2021 season." (Complaint, ¶ 98, iii). But this again does not tell us when the alleged misrepresentations (the central question of fraud) were made.

Plaintiff identifies "**where**" by stating that the University is located in Tucson, Arizona and that UCLA is located in Los Angeles. (Complaint, ¶ 98, iv). Plaintiff then indicates that the "X-Drive" was released "in at least Arizona and California." However, Plaintiff does not indicate where the *alleged misrepresentation* occurred, again the key question in a fraud claim. *Kearns*, *supra* at 1126.

Finally, Plaintiff purports to identify "**how**" by describing the fact that the thumb drive Dougherty supplied to the assistant when he arrived at the University contained Coach Sumlin's playbook. Again, the how here must refer to the alleged misrepresentation. *Kearns*, *supra* at 1126. Again, Plaintiff does not provide any information about it.

### 6.    The Seventh Count for Defamation Fails

**Statute of limitations**: The statute of limitations for defamation is one year. Cal. Code Civ. Proc. § 340(c); *Mullan v. Daniels*, 2021 U.S. Dist. LEXIS 70871, *11 (N.D. Cal. 2021). The "publications" identified by Plaintiff (sharing the University playbook and statements that he was terminated for a poor season) occurred before or

29

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

around the time of his separation of employment from the University in December 2020. As such, the statute of limitations clearly bars this claim.

**Substantive failure**: The elements of a defamation claim are (1) a publication that is (2) false, (3) defamatory, (4) unprivileged, and (5) has a natural tendency to injure or causes special damage. *Taus v. Loftus*, 40 Cal.4th 683, 720 (2007). "To state a claim, [the plaintiff] must make sufficient factual allegations to show, not just state, that [defendant] is plausibly liable for defamation." *Holden v. Target Corp.*, 2016 U.S. Dist. LEXIS 95490, *19 (N.D. Cal. 2016).

Again, Plaintiff has simply not pled a plausible underlying claim, and thus this claim fails for this reason alone. Plaintiff alleges that someone "made a representation that Plaintiff was terminated due to a 'poor season.'" Plaintiff does not allege who made this statement, or to whom this statement was made. *See Ringler Associates v. Maryland Casualty*, 80 Cal.App.4th 1165, 1179 (2000) ("publication" requires communication to a third party). Nor does Plaintiff allege any facts supporting any of the other elements, most importantly, that this statement was even false. Additionally, the statement that Plaintiff was terminated "due to a 'poor season'" is simply too vague to be capable of being proved true or false, and thus is not actionable. *Seelig v. Infinity Broad. Corp.*, 97 Cal.App.4th 798, 811 (2002). *Johnson v. Eckstrom*, 2011 U.S. Dist. LEXIS 136730 (N.D. Cal. 2011). For these reasons, the defamation claim fails.

As for the alleged publication of the University playbook, Plaintiff's defamation claim similarly fails because he does not allege that the content of that "publication" was false, how the information in the playbook could be defamatory, or have a natural tendency to injure him.

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

MOTION TO DISMISS
Case No. 2:23-cv-07282 ODW(MARx)
82872\315568378.v1

**D.      The University of Arizona is a Non-Jural Entity, and To the Extent Any Causes of Action Survive, Should be Dismissed**

In addition to the many deficiencies described above, the claims against the University of Arizona should be dismissed because it is a non-jural entity and cannot be sued in its own name. Arizona law governs whether State entities are jural entities that properly may be named as defendants in legal actions. *See Grande v. Casson*, 50 Ariz. 397 (1937);  *Kimbell v. Shofstall*, 17 Ariz. App. 11, 13 (1972) (State Board of Education cannot sue or be sued); *Yamamoto v. Santa Cruz County Board of Supervisors*, 124 Ariz. 538, 539 (App. 1979) (no action against a State agency that lacks statutory authority to sue or be sued in its own name).

Here, ABOR is a public corporate body empowered by the Arizona legislature to govern the state's universities. A.R.S. § 15-1625(A). The legislature authorized only ABOR, ***not the individual universities***, to sue and be sued in its own name. A.R.S. § 15-1625(B)(3). Thus, ABOR is the proper defendant in any claim asserted against any public university in Arizona. *See Ansel Adams Publ. Rights Trust v. PRS Media Partners*, *supra* at 660 ("the University [of Arizona] cannot be sued in its own name; rather, the Arizona Board of Regents (Board) . . . is the proper defendant for all actions against the University.")

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

## IV.  <u>CONCLUSION</u>

For the foregoing reasons, the instant motion should be sustained. Leave to amend would be futile, and should therefore be **<u>denied</u>**. *California Architectural Bldg. Prod. v. Franciscan Ceramics*, 818 F.2d 1466, 1472 (9th Cir. 1988).

DATED:  December 15, 2023                    HINSHAW & CULBERTSON LLP

By:  */s/Michael A.S. Newman*
MICHAEL A.S. NEWMAN
Attorneys for Defendants Arizona
Board of Regents, on its own behalf,
and for and on behalf of the University
of Arizona; Dave Heeke; Jedd Fisch;
and Jimmie Dougherty

32

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## L.R. 11-6.2 CERTIFICATE OF COMPLIANCE

The undersigned – counsel of record for Defendants Arizona Board of Regents, on its own behalf, and for an on behalf of the University of Arizona; Dave Heeke; Jedd Fisch; and Jimmie Dougherty -- certifies that this brief contains 6,991 words, which complies with the word limit of L.R. 11-6.1.

DATED:  December 15, 2023                    HINSHAW & CULBERTSON LLP

                                        By: */s/Michael A.S. Newman*
                                        MICHAEL A.S. NEWMAN
                                        SARA E. FRANKS
                                        Attorneys for Defendants Arizona
                                        Board of Regents, on its own behalf,
                                        and for and on behalf of the University
                                        of Arizona; Dave Heeke; Jedd Fisch;
                                        and Jimmie Dougherty

HINSHAW & CULBERTSON LLP
350 South Grand Ave., Suite 3600
Los Angeles, CA 90071-3476
213-680-2800

MOTION TO DISMISS
Case No. 2:23-cv-07282 ODW(MARx)
82872\315568378.v1