**O**

# United States District Court
# Central District of California

THERON AYCH,

           Plaintiff,

    v.

UNIVERSITY OF ARIZONA et al.,

           Defendants.

Case № 2:23-cv-07282-ODW (MARx)

**ORDER GRANTING MOTION TO DISMISS [41]**

## I.    INTRODUCTION

Plaintiff Theron Aych brings this action alleging racketeering, anti-competitive conduct, discrimination, and various tort causes of action.  (*See* Compl., ECF No. 1.)  Defendants University of Arizona ("UofA"), The Arizona Board of Regents ("ABOR"), Dave Heeke, Jedd Fisch, and Jimmie Dougherty (collectively, "Defendants") move to dismiss Aych's claims against them pursuant to Federal Rules of Civil Procedure ("Rules" or "Rule") 8, 9, 12(b)(1), 12(b)(2), and 12(b)(6).  (*See* Mot. Dismiss ("Mot." or "Motion"), ECF No. 41.)  Finding the Court lacks subject matter and personal jurisdiction over Defendants, the Court **GRANTS** the Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II.    BACKGROUND[2]

From 2017 to 2020, Aych was an assistant coach for the UofA football team. (Compl. ¶ 1.)  Beginning in 2018, Kevin Sumlin was Aych's Head Coach.  (*Id.* ¶ 36.)  During the 2018 to 2020 football seasons, UofA football had a losing record.  (*Id.* ¶ 37.)  After the 2020 season, UofA terminated the entire coaching staff, including Aych, due to a "poor season."  (*Id.*)  UofA then hired Fisch as Head Coach.  (*Id.* ¶ 38.)  UofA Director of Athletics Heeke had a longstanding relationship and history with Fisch.  (*Id.*)  Fisch in turn hired Dougherty as Head Assistant Coach.  (*Id.* ¶ 40.)  Fisch and Dougherty previously worked together at the University of California, Los Angeles ("UCLA"), in 2017,[3] and at the University of Michigan before that.  (*Id.*)

On Dougherty's first day at UofA, Dougherty handed a flash drive to a staff member and requested the staff member update the drive's files to reflect UofA logos. (*Id.* ¶ 41.)  The staff member reviewed the drive's files and found they appeared to include Sumlin's playbook and other UofA documents.  (*Id.* ¶ 42.)  From these facts, Aych concludes that UofA, ABOR, Heeke, Fisch, Dougherty, and others conspired and purposefully disseminated Sumlin's private football playbook to opposing college football teams from National Collegiate Athletic Association ("NCAA") and Pacific 12 Conference ("Pac-12") institutions, including UCLA, in order to torpedo UofA's 2018 to 2020 football seasons so UofA could terminate the coaching staff under the pretense of ineffective coaching.  (Compl. ¶¶ 2, 4, 68.)

---

[2] Background facts derive from Aych's well-pleaded allegations, unless otherwise noted.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  The Court does not accept as true speculative or conclusory allegations.  *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).

[3] The Court **DENIES** Defendants' request for judicial notice that Fisch coached at UCLA only in the year 2017, and not in 2018 to 2020 as Aych alleges, as this fact is not independently verifiable from a source whose accuracy cannot be questioned.  The website link Defendants provide for UofA athletics staff directory does not list Fisch's time at UofA.  *See* https://arizonawildcats.com/staff-directory/jedd-fisch/1529 (indicating the page no longer exists).

Based on the foregoing facts, Aych brings this legal action against Defendants and others.[4]  (Compl. ¶¶ 61–103.)  As relevant to the Motion, Aych asserts two causes of action against Heeke, Fisch, and Dougherty ("Individual Defendants") for racketeering under 18 U.S.C. §§ 1961–68 ("RICO") and anti-competitive conduct in violation of the Sherman Act, 15 U.S.C. § 1.  (Compl. ¶¶ 61–82.)  Aych asserts four causes of action against ABOR and UofA for intentional and negligent interference with prospective economic advantage, fraud, and defamation.  (Compl. ¶¶ 83–103.)

Defendants move to dismiss Aych's claims against them, pursuant to: (i) Rule 12(b)(1), for lack of subject matter jurisdiction; (ii) Rule 12(b)(2), for lack of personal jurisdiction; and (iii) Rule 12(b)(6), for failure to state a claim.  (Mot. 11.) Aych filed an untimely opposition.  (*See generally* Opp'n, ECF No. 55.)  Defendants timely replied.  (Reply, ECF No. 61.)

### III. LEGAL STANDARDS

### A. Rule 12(b)(1)

Pursuant to Rule 12(b)(1), a party may move to dismiss a case for lack of subject matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "A Rule 12(b)(1) jurisdictional attack may be facial or factual."  *Safe Air for Everyone v. Meyer*, 373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the allegations contained in a complaint are insufficient on their face to invoke federal jurisdiction." *Id*.  "[I]n a factual attack, the challenger disputes the truth of the allegations that, by themselves, would otherwise invoke federal jurisdiction."  *Id*.  In resolving a factual attack, "the district court may review evidence beyond the complaint without converting the motion to dismiss into a motion for summary judgment."  *Id*. (citing *Savage v. Glendale Union High Sch.*, 343 F.3d 1036, 1039 n.2 (9th Cir. 2003)).  The court does not need to presume the truthfulness of the plaintiff's allegations.  *Id*.  Once a party has moved to dismiss for lack of subject matter jurisdiction under

---

[4] Aych also brings a cause of action for discrimination under 42 U.S.C. § 1981 against Defendants NCAA and Pac-12.  (Compl. ¶¶ 53–60.)  The Court addresses the NCAA's motion to dismiss, (ECF No. 49), in a separate order.

Rule 12(b)(1), the opposing party bears the burden of establishing the court's jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994); *Chandler v. State Farm Mut. Auto. Ins. Co.*, 598 F.3d 1115, 1122 (9th Cir. 2010).

**B.    Rule 12(b)(2)**

Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit. Fed. R. Civ. P. 4(k)(1)(A). "California's long-arm jurisdictional statute is coextensive with federal due process requirements . . . ." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see* Cal. Civ. Proc. Code § 410.10.   When this is the case, the court inquires whether the defendant "ha[s] certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

When a defendant seeks dismissal under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007).   Where, as here, a motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990).   However, the plaintiff cannot "simply rest on the bare allegations of its complaint." *Schwarzenegger*, 374 F.3d at 800.   The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit, but factual conflicts between dueling affidavits must be resolved in the plaintiff's favor." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (internal citation and quotation marks omitted).   "Mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007).   Nor will "random," "fortuitous," or "attenuated"

1   contacts establish specific personal jurisdiction.  *Burger King Corp. v. Rudzewicz*,
2   471 U.S. 462, 475 (1985).

3   **C.    Leave to Amend**

4          Where a district court grants a motion to dismiss, it should generally provide
5   leave to amend unless it is clear the complaint could not be saved by any amendment.
6   *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d
7   1025, 1031 (9th Cir. 2008).    Leave to amend may be denied when "the court
8   determines that the allegation of other facts consistent with the challenged pleading
9   could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture
10  Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986).    Thus, leave to amend "is properly
11  denied . . . if amendment would be futile." *Carrico v. City & County of San
12  Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

13                              **IV.      DISCUSSION**

14         Defendants move to dismiss Aych's claims against them based on a lack of
15  subject matter jurisdiction, because the claims are barred by the Eleventh
16  Amendment's sovereign immunity, and based on the court's inability to exercise
17  personal jurisdiction over them.[5]  (Mot. 11.)  Before considering Defendants' moving
18  arguments, the Court first addresses several preliminary issues.

19  **A.    Preliminary Matters**

20         First, Aych filed this action on September 1, 2023, against a number of
21  defendants, including UCLA and Pac-12.  (*See* Compl. ¶¶ 19, 21.)  However, Aych
22  asserts no causes of action against UCLA and, more than nine months later, Aych has
23  still not served UCLA or Pac-12.  Rule 4(m) provides, "If a defendant is not served
24  within 90 days after the complaint is filed, the court . . . must dismiss the action
25  without prejudice against that defendant or order that service be made within a
26  specified time."  Fed. R. Civ. P. 4(m); *see also* Hon. Otis D. Wright, II Standing Order

---

27  [5] Defendants also argue Aych's claims fail under Rule 12(b)(6).  As the Court finds the first two
28  jurisdictional arguments meritorious, it declines to reach Defendants' third argument pursuant to
    Rule 12(b)(6).

§ VI.A., https://www.cacd.uscourts.gov/honorable-otis-d-wright-ii.   Due to Aych's failure to serve UCLA or Pac-12 within ninety days pursuant to Rule 4(m), or at any time in the nine months since initiating this action, the Court **DISMISSES UCLA** and **Pac-12**, without prejudice.

Next, in response to Defendants' Rule 12 Motion, the Court issued an Order reminding Aych that the Federal Rules of Civil Procedure permitted him to amend his Complaint as a matter of course within twenty-one days of the Motion, if he so elected, instead of opposing the Motion.   (Order re Rule 15(a)(1)(B), ECF No. 44.) "The Court has found that such reminders may advance judicial economy."   (*Id.*) Aych elected not to amend as permitted by Rule 15, instead filing an opposition that does not address many of the moving arguments four days after his deadline to oppose.   (*See generally* Opp'n.)  Based on untimeliness alone, the Court could decline to consider Aych's opposition altogether and grant the Motion.  *See* C.D. Cal. L.R. 7-12 ("The Court may decline to consider any memorandum or other document not filed within the deadline set by order or local rule. The failure to file any required document . . . within the deadline, may be deemed consent to the granting or denial of the motion.").

Also, although he elected not to amend his Complaint pursuant to Rule 15, Aych nevertheless improperly embeds a "Motion for Leave to Amend Complaint" in his opposing memorandum, asserting that an "amended Complaint would make the majority of the issues presented by Defendants moot."   (Opp'n 14–15 (emphasis omitted).)  Notably, it is precisely the purpose of Rule 15(a)(1)(B)'s leave to amend to resolve through amendment uncontested pleading issues.   Regardless, Aych's embedded motion is improper and the Court **STRIKES** it.   (*Id.*)  Accordingly, the Court construes Aych's request as seeking leave to amend to the extent the Court grants the Motion.

Finally, Aych does not oppose or even respond to several of Defendants' moving arguments.  (*See generally id.* at 19–30.)  He nominally addresses personal

jurisdiction, and opposes dismissal of the RICO, Sherman Act, and fraud claims, but he fails to respond substantively or otherwise to Defendants' arguments regarding sovereign immunity, intentional and negligent interference with prospective economic advantage, and defamation.  (*See generally id.*)  The Court could grant Defendants' Motion in full on the basis of Aych's concession that sovereign immunity bars the suit against Defendants, or in part as to Aych's concession that his claims for interference and defamation are inadequately pleaded.  *See Heraldez v. Bayview Loan Servicing, LLC*, No. 2:16-cv-1978-R, 2016 WL 10834101, at *2 (C.D. Cal. Dec. 15, 2016) ("Failure to oppose constitutes a waiver or abandonment of the issue."), *aff'd*, 719 F. App'x 663 (9th Cir. 2018).

Despite these procedural deficiencies, the Court nevertheless finds substantive grounds for dismissal in Defendants' moving arguments concerning sovereign immunity and personal jurisdiction.

**B.    Sovereign Immunity—Eleventh Amendment**

The Eleventh Amendment[6] bars suits which seek relief against a state, an "arm of the state," its instrumentalities, or its agencies.  *Durning v. Citibank, N.A.*, 950 F.2d 1419, 1422–23 (9th Cir. 1991); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984) (holding Eleventh Amendment proscribes suit against state agencies "regardless of the nature of the relief sought").  Public universities are entitled to sovereign immunity under the Eleventh Amendment, as are their employees in their official capacities[7].  *See Rounds v. Or. State Br. of Higher Educ.*, 166 F.3d 1032, 1035 (9th Cir. 1999) (finding University of Oregon and Oregon State Board of Higher Education immune under Eleventh Amendment); *Mitchell v. L.A. Cmty. Coll. Dist.*,

---

[6] The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against any one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."  U.S. Const. amend. XI.

[7] The narrow exception to Eleventh Amendment immunity for suits seeking declaratory and injunctive relief against official capacity state officers provided in *Ex Parte Young*, 209 U.S. 123, 155–56 (1908), does not apply here, as the only relief Aych seeks is damages, (*see* Compl., Prayer).

861 F.2d 198, 201–02 (9th Cir. 1988), *holding modified on other grounds by Kohn v. State Bar of Cal.*, 87 F.4th 1021 (9th Cir. 2023) (finding California state college employees sued in official capacity immune).  However, the Eleventh Amendment does *not* bar suits seeking damages against public university employees in their individual capacities.  *Stoner v. Santa Clara Cnty. Off. of Educ.*, 502 F.3d 1116, 1125 (9th Cir. 2007) (citing *Hafer v. Melo*, 502 U.S. 21, 30–31 (1991)).

Considering the entity Defendants first, UofA is a non-jural entity under Arizona law and "cannot be sued in its own name."  *Ansel Adams Publ'g Rts. Tr. v. PRS Media Partners, LLC*, 502 F. App'x 659, 660 (9th Cir. 2012).  "[R]ather, the [ABOR], as the governing body for Arizona's public universities, is the proper defendant for all actions against [UofA]."  *Id.*  Regarding ABOR, the Ninth Circuit has consistently "held that ABOR is an arm of the State of Arizona for Eleventh Amendment purposes."  *Ariz. Students' Ass'n v. Ariz. Bd. of Regents*, 824 F.3d 858, 864–65 (9th Cir. 2016); *Ansel Adams*, 502 F. App'x at 661 ("The Ninth Circuit already determined that [ABOR] is entitled to immunity as a matter of law . . . ."); *Ronwin v. Shapiro*, 657 F.2d 1071, 1073 (9th Cir. 1981) ("[W]e conclude that [ABOR] is protected by the [E]leventh [A]mendment.")  Accordingly, UofA and ABOR are immune from Aych's suit.

In contrast, Aych sues Individual Defendants in their individual capacities, (*see* Compl. 1, 2), a fact which Defendants neglect to acknowledge, (Mot. 14–15 (arguing state employees are immune from suit while omitting that sovereign immunity applies only to suits in a state employee's *official* capacity).)  Therefore, Individual Defendants may not invoke sovereign immunity from Aych's suit.

## C. Personal Jurisdiction

As Individual Defendants are not immune from this suit, the Court turns to whether they are subject to personal jurisdiction in this Court.  A non-resident defendant may be subject to either general or specific personal jurisdiction.  *F.D.I.C. v. British-Am. Ins. Co.*, 828 F.2d 1439, 1442 (9th Cir. 1987).

Defendants argue they are not subject to personal jurisdiction here because: (1) they are not domiciled in or have continuous contacts with California—no general personal jurisdiction; (2) they have not purposefully directed any conduct or availed themselves of the benefits of conducting business in California—no specific personal jurisdiction; and (3) RICO does not establish personal jurisdiction over them—no RICO personal jurisdiction. (Mot. 17–18.) Aych does not respond to these arguments. (*See generally* Opp'n 15–16.)  Instead, under a heading purporting to address personal jurisdiction, he contends *venue* is proper in this district pursuant to the RICO statute because Individual Defendants transact business here.  (*Id.*)  As noted above, the failure to respond to a moving argument constitutes concession or waiver, and the Court could grant the Motion on this basis.  *See Heraldez*, 2016 WL 10834101, at *2. Nevertheless, the Court evaluates the three potential bases for personal jurisdiction and finds them lacking.

### 1.    General Personal Jurisdiction

A court may assert general jurisdiction over foreign defendants "to hear any and all claims against them when their affiliations with the State are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Ops., S.A. v. Brown*, 564 U.S. 915, 919 (2011) (quoting *Int'l Shoe*, 326 U.S. at 317).  Aych alleges Individual Defendants live and work in Arizona, (Compl. ¶¶ 22–24); he does not allege they are domiciled in or have continuous contacts with California, (*see generally id.*).  Accordingly, Aych does not establish that the Court may exercise general personal jurisdiction over Defendants.

### 2.    Specific Personal Jurisdiction

To determine whether a defendant's contacts with the forum state are sufficient to render the exercise of specific jurisdiction reasonable, the Ninth Circuit applies a three-prong test: (a) the nonresident defendant purposefully directs activities or consummates some transaction with the forum-state, or performs some act by which he personally avails himself of the privilege of conducting activities in that forum;

(b) the claim arises out of or relates to the defendant's forum-related activities; and (c) the exercise of jurisdiction comports with fair play and substantial justice, *i.e.*, it is reasonable. *Schwarzenegger*, 374 F.3d at 802. The party asserting jurisdiction, Aych here, bears the burden of satisfying the first two prongs of this test. Once he has done so, the burden shifts to the party contesting jurisdiction, Individual Defendants here, to establish that the third prong—reasonableness—has not been satisfied. *Id.*

In assessing the first prong of the specific jurisdiction test, courts distinguish between contract and tort cases. *See Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991). Here, Aych brings claims against Individual Defendants sounding in tort, for racketeering and anti-competitive conduct. *See Barantsevich v. VTB Bank*, 954 F. Supp. 2d 972, 991 (C.D. Cal. 2013) (finding fraud and RICO violations sound in tort). For claims sounding in tort, courts apply a "purposeful direction test" and look to "evidence that the defendant has directed his actions at the forum state, even if those actions took place elsewhere." *Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (quoting *Schwarzenegger*, 374 F.3d at 802–03). Thus, the first prong of specific personal jurisdiction, purposeful direction, is satisfied when the plaintiff demonstrates the defendant "(1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Dole Foods Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir. 2002); *Calder v. Jones*, 465 U.S. 783 (1984).

Here, Aych contends Sumlin's playbook was released to other football teams to make UofA football lose for the 2018 to 2020 seasons, so that UofA could fire its coaching staff. (Compl. ¶¶ 68, 74.) Thus, to garner personal jurisdiction in California, the purposeful direction at issue can only be the alleged release of Sumlin's playbook, as all other aspects of Aych's contention—making UofA football lose and firing UofA coaching staff—are centered in Arizona.

The alleged release of Sumlin's playbook does not support specific personal jurisdiction over Individual Defendants. First, Aych consistently alleges that UofA, or

unknown actors within UofA, are responsible.   (*Id.* ¶¶ 2 ("[UofA] purposefully transferred"), 33 ("released by UofA"), 44 ("unknown actors within UofA"), 48 ("a coordinated effort by [UofA]").)   Yet, Aych alleges Fisch and Dougherty have only worked at UofA since 2021.  (*Id.* ¶¶ 23–24.)  As Aych's own allegations employ Fisch or Dougherty at UofA starting long after the alleged release of Sumlin's playbook (necessarily sometime before the 2018 to 2020 football seasons), Fisch and Dougherty cannot be the "unknown actors within" UofA who Aych alleges purposefully disseminated Sumlin's playbook.  (*Id.* ¶ 44.)

Second, even accepting the speculative inference that Heeke is responsible for the playbook's alleged release, Aych asserts that it was released and transferred to "one or more of the NCAA and Pac-12" member institutions.  (*See, e.g.*, Compl. ¶ 33.) The NCAA is an association of "more than 1,200 United States colleges, universities, and athletic conferences," (*id.* ¶ 18), and Pac-12 has member institutions in Arizona, California, Colorado, Oregon, Utah, and Washington, (*id.* ¶¶ 21, 28).  Thus, Aych is alleging that "UofA purposely transferred and released" the playbook to opposing teams in at least six states (Pac-12), and likely many more (NCAA). (*See* Compl. ¶ 2.) This forecloses a finding that the playbook's release was "expressly aimed" particularly at California.  *Dole Foods*, 303 F.3d at 1111.  Similarly, the harmful effects that Aych alleges—his termination with the entire coaching staff—occurred in Arizona, precluding a finding that Heeke or UofA knew harm was "likely to be suffered in" California.  *Id.*

Aych fails to meet his burden to establish that Individual Defendants are subject to specific personal jurisdiction in this Court, and the Court finds they are not.

### 3.   *RICO Personal Jurisdiction*

Finally, Aych makes a cursory reference in a section heading to the RICO venue and service statute, 18 U.S.C. § 1965(a).[8]   (Opp'n 15.)   Although not clearly

---

[8] Section 1965(a) provides: "(a) Any civil action or proceeding under this chapter against any person may be instituted in the district court of the United States for any district in which such person resides, is found, has an agent, or transacts his affairs."

articulated, Aych may be arguing that, since Individual Defendants are allegedly part of a nationwide conspiracy, they should be subject to personal jurisdiction under RICO's venue and process provision.

RICO authorizes nationwide service and the exercise of jurisdiction over a defendant present anywhere in the United States. *Butcher's Union Local No. 498 v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986); *Barantsevich*, 954 F. Supp. 2d at 991. However, this authorization is not unlimited. *Butcher's Union*, 788 F.2d at 539. Before § 1965(a) authorizes personal jurisdiction over the conspiracy defendants, "the court must have personal jurisdiction over at least one of the participants," and "the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators" *Id.* *See also Gilbert v. DaGrossa*, 756 F.2d 1455, 1459 (9th Cir. 1985) ("[I]n order to bring a damage action against a [state] official in his individual capacity, and thereby avoid the bar of sovereign immunity, the normal rules for establishing in personam jurisdiction apply.")

Aych does not satisfy these requirements. As discussed above, the Court lacks personal jurisdiction over any Individual Defendant alleged to have engaged in the conspiracy to release Sumlin's playbook, torpedo UofA's football seasons, and fire the coaching staff. Furthermore, as Defendants correctly note, there is another district in which the court would have personal jurisdiction over all of the alleged co-conspirators—Arizona. As such, Aych fails to establish that the Court may exercise personal jurisdiction over Individual Defendants pursuant to RICO.

## V.   CONCLUSION

For the reasons discussed above, the Court **GRANTS** Defendants' Motion to Dismiss, without leave to amend. (ECF No. 41.) The Court **DISMISSES** UofA and ABOR with prejudice and without leave to amend, as leave to amend would be futile against these immune Defendants. *Carrico*, 656 F.3d at 1008. The Court **DISMISSES** Individual Defendants without prejudice, for lack of personal

jurisdiction, and without leave to amend, as the Court finds "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib.*, 806 F.2d at 1401.

**IT IS SO ORDERED.**

July 5, 2024

_____
**OTIS D. WRIGHT, II**
**UNITED STATES DISTRICT JUDGE**