O

# United States District Court
# Central District of California

| | |
|---|---|
| THERON AYCH,<br><br>                    Plaintiff,<br><br>         v.<br><br>UNIVERSITY OF ARIZONA, et al.,<br><br>                    Defendants. | Case № 2:23-cv-07282 ODW (MARx)<br><br>**ORDER GRANTING MOTION TO DISMISS [49]** |

## I.  INTRODUCTION

Plaintiff Theron Aych brings a single claim against Defendant National Collegiate Athletic Association (the "NCAA"), alleging discrimination under 42 U.S.C. § 1981. (Compl. ¶¶ 53–60, ECF No. 1.)  The NCAA now moves to dismiss the claim under Federal Rules of Civil Procedure ("Rule" or "Rules") 12(b)(1), (2), (3), and (6).  (Mot. Dismiss ("Mot." or "Motion") 1, ECF No. 49.)  The Motion is fully briefed.  (Opp'n, ECF No. 62; Reply, ECF No. 64.)  For the following reasons, the Court **GRANTS** Defendant's Motion.[1]

---

[1] Having carefully considered the papers filed in connection with the Motion, the Court deemed the matter appropriate for decision without oral argument.  Fed. R. Civ. P. 78; C.D. Cal. L.R. 7-15.

## II. BACKGROUND

Aych is an African American football coach. (Compl. ¶ 55.) In 2017, University of Arizona ("UofA") hired Aych as an assistant football coach. (*Id.* ¶ 35.) In 2018, UofA also hired Kevin Sumlin ("Sumlin") as the head coach. (*Id.* ¶ 36.) In 2020, UofA terminated Sumlin and his entire coaching staff after suffering a losing record from 2018 to 2020. (*Id.* ¶ 37.) UofA then hired new coaches from UCLA, one of whom Aych alleges had possession of Sumlin's confidential UofA playbook. (*Id.* ¶¶ 39–43.) Aych alleges that UofA engaged in a coordinated effort to undermine and cause UofA football to suffer a losing record, so that UofA could replace the entire coaching staff; UofA allegedly accomplished this by disseminating the playbook to rival teams. (*Id.* ¶ 44). Accordingly, Aych brought this action against numerous defendants, including one count against the NCAA for discrimination under 42 U.S.C. § 1981. (*Id.* ¶¶ 53–60.)

The NCAA is an unincorporated association of more than 1,200 colleges, universities, and athletic conferences, with its principal place of business in Indianapolis, Indiana. (*Id.* ¶ 18.) Aych alleges that the NCAA allowed discrimination against him on the basis of race and/or color by: (1) "allowing unfair competition amongst schools to diminish the professional reputation of African American college football coaches, specifically in this instance, [Aych]"; (2) "subjecting [Aych] to disparate terms and conditions of employment, including but not limited to, lack of opportunities and harm to [Aych]'s professional reputation due to racial biases and unethical practices"; and (3) "subjecting [Aych] and other African American coaches to a heightened scrutiny and unequal compensation relative to his white peers." (*Id.* ¶ 55.) The NCAA moves to dismiss this claim under Rules 12(b)(1), (2), (3), and (6). (Mot. 1.) The Court finds that it does not have personal jurisdiction, and does not reach the NCAA's further arguments for dismissal.

### III. LEGAL STANDARD

Federal courts have the power to exercise personal jurisdiction to the extent permitted by the laws of the states in which they sit. Fed. R. Civ. P. 4(k)(1)(A). "California's long-arm jurisdictional statute is coextensive with federal due process requirements . . . ." *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800–01 (9th Cir. 2004); *see* Cal. Civ. Proc. Code § 410.10. When this is the case, the court inquires whether the defendant "ha[s] certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)); *Glencore Grain Rotterdam B.V. v. Shivnath Rai Harnarain Co.*, 284 F.3d 1114, 1123 (9th Cir. 2002).

When a defendant seeks dismissal under Rule 12(b)(2), the plaintiff bears the burden of demonstrating that personal jurisdiction is proper. *Menken v. Emm*, 503 F.3d 1050, 1056 (9th Cir. 2007). Where, as here, a motion to dismiss for lack of personal jurisdiction is based on written materials rather than an evidentiary hearing, "the plaintiff need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). However, the plaintiff cannot "simply rest on the bare allegations of its complaint." *Schwarzenegger*, 374 F.3d at 800. The court "may not assume the truth of allegations in a pleading which are contradicted by affidavit, but factual conflicts between dueling affidavits must be resolved in the plaintiff's favor." *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 978 (9th Cir. 2021) (internal citation and quotation marks omitted). "Mere 'bare bones' assertions of minimum contacts with the forum or legal conclusions unsupported by specific factual allegations will not satisfy a plaintiff's pleading burden." *Swartz v. KPMG LLP*, 476 F.3d 756, 766 (9th Cir. 2007). Nor will "random," "fortuitous," or "attenuated" contacts establish specific personal jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985).

Where a district court grants a motion to dismiss, it should generally provide leave to amend unless it is clear the complaint could not be saved by any amendment. *See* Fed. R. Civ. P. 15(a); *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Leave to amend may be denied when "the court determines that the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib. Co. v. Serv-Well Furniture Co.*, 806 F.2d 1393, 1401 (9th Cir. 1986). Thus, leave to amend "is properly denied . . . if amendment would be futile." *Carrico v. City & County of San Francisco*, 656 F.3d 1002, 1008 (9th Cir. 2011).

## IV. DISCUSSION

The NCAA argues that this Court lacks personal jurisdiction over it because it is a resident of Indiana, and because Aych's claims do not arise out of any contacts the NCAA has in California. (Mot. 1.) Aych argues that this Court has specific personal jurisdiction over the NCAA based on its contractual relationship with its member institutions. (Opp'n 14–16.) As Aych makes no argument for general personal jurisdiction, (*see generally* Opp'n), the Court addresses only specific personal jurisdiction.

Specific jurisdiction exists where a case arises out of or is related to activities within the forum state. *Schwarzenegger*, 374 F.3d at 802. "[A] defendant's contacts with the forum state may be intertwined with his transactions or interactions with the plaintiff or other parties," but "[a] defendant's relationship with a plaintiff or third party, standing alone, is an insufficient basis for jurisdiction." *Walden v. Fiore*, 571 U.S. 277, 286 (2014).

The Ninth Circuit analyzes specific jurisdiction under a three-pronged test: (1) "The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;" (2) "the claim must be one

which arises out of or relates to the defendant's forum-related activities"; and (3) "the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable." *Schwarzenegger*, 374 F.3d at 802. "If the plaintiff succeeds in satisfying both of the first two prongs, the burden then shifts to the defendant to 'present a compelling case' that the exercise of jurisdiction would not be reasonable." *Id.* (citing *Burger King Corp.*, 471 U.S. at 476–78).

### A. First Prong: Purposeful Availment & Direction

In the context of specific jurisdiction, availment and direction are two distinct concepts. *Id.* For cases sounding in contract, such as this one, a purposeful availment analysis is most often used.[2] *Id.* As Aych does not raise purposeful direction to establish personal jurisdiction, the Court considers only whether purposeful availment supports specific jurisdiction over the NCAA.

"Purposeful availment analysis examines whether the defendant's contacts with the forum are attributable to his own actions or are solely the actions of the plaintiff." *Roth v. Garcia Marquez*, 942 F.2d 617, 621 (9th Cir. 1991) (quoting *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988)). "In order to have purposefully availed oneself of conducting activities in the forum, the defendant must have performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state." *Id.* The purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of random, fortuitous, or attenuated contacts, or of the unilateral activity of another party or third person." *Burger King Corp.*, 471 U.S. at 475 (citations and internal quotation marks omitted). The existence of a contract with a resident of the forum state is insufficient by itself to create personal jurisdiction over a nonresident. *Id.* at 478.

---

[2] Aych brings only a § 1981 claim against the NCAA. (Compl. ¶¶ 53–60.) Section 1981 grants all persons the right to "make and enforce contracts." 42 U.S.C. § 1981. Thus, a plaintiff can only state a claim under § 1981 if "he has (or would have) rights under the existing (or proposed) contract that he wishes 'to make and enforce.'" *Domino's Pizza, Inc. v. McDonald*, 546 U.S. 470, 479–80 (2006). Accordingly, Aych's § 1981 claim against the NCAA sounds in contract.

However, parties who "reach out beyond one state and create continuing relationships and obligations with citizens of another state" are subject to regulation and sanctions in the other State for the consequences of their activities." *Id.* at 473 (quoting *Travelers Health Ass'n v. Virginia*, 339 U.S. 643, 647 (1950)).

Aych contends that the NCAA, in its capacity to punish, deter, and regulate its member institutions, purposefully availed itself of the benefits of California because it "deliberately reached out beyond Indianapolis with a contract or business transaction" that created a continuing relationship with its member institutions in California. (Opp'n 16–17.) As Aych notes, the NCAA has fifty-seven member institutions in California, which he asserts exemplify its contacts with the state. (*Id.* at 16.)

The NCAA may certainly have continuing relationships with its California member institutions. However, the NCAA does not reach out of Indiana simply because it has the authority to punish, deter, and regulate those institutions. As the NCAA notes in both its Motion and its Reply, the NCAA legislates and regulates in Indiana, and thus any decision to exercise its authority over its various member institutions would also have taken place in Indiana. (Mot. 8; Reply 3–4.)

Indeed, federal district courts in California have found that the NCAA's legislative function is located in Indiana, and have rejected arguments for specific personal jurisdiction in other states. *See Aldrich v. Nat'l Collegiate Athletic Ass'n*, 484 F. Supp. 3d 779, 795 (N.D. Cal. 2020) (finding that harm caused by the NCAA's failure to legislate arises out of Indiana, and that to find otherwise would improperly subject the NCAA to personal jurisdiction in all fifty states). Similar to the court's finding in *Aldrich*, that the NCAA can regulate its members and allegedly failed to do so in this case does not mean that it is purposefully availing itself of or reaching into California. Indeed, as *Aldrich* notes, the NCAA has more than 1,200 member institutions nationwide, and a finding of personal jurisdiction based on its ability to regulate would mean that the NCAA could be haled into court in any state, which is plainly unreasonable. Aych does not in any way address this issue in his opposition

brief, or suggest that the situation here is meaningfully different from that in *Aldrich*. (*See generally* Opp'n.) Thus, the Court finds that Aych fails to establish the NCAA has purposefully availed itself of California.

### B. Second Prong: Relation to Forum

The second prong—whether the plaintiff's claim arises out of or is related to the defendant's contact with the forum—is met when there is "an affiliation between the forum and the underlying controversy, principally, an activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." *Bristol-Myers Squibb Co. v. Superior Ct. of California, San Francisco Cnty.*, 582 U.S. 255, 262 (2017) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)).

Aych alleges that the NCAA allowed discrimination against him in violation of § 1981, and argues that this claim arises out of or relates to the NCAA's ability to regulate and legislate in California. (Opp'n 17.) As discussed above, any harm arising out of the NCAA's alleged failure to regulate its member institutions arises out of Indiana, not California.

However, even were that not the case, Aych was not harmed in California. Section 1981 grants Aych the right to "give and receive contractual rights on [his] own behalf." *Domino's Pizza*, 546 U.S. at 475 (emphasis omitted). Aych's § 1981 claim against the NCAA requires that he "initially identify an impaired contractual relationship under which [he] has rights." *Id*. (internal citation and quotation marks omitted). Here, however, Aych alleges no contract with the NCAA under which he has rights. In fact, the only contractual relationship to which Aych was a party was his employment relationship with UofA. (*See* Compl ¶ 34.) As such, as a matter of law, UofA was the only NCAA member institution who could have discriminated against Aych in the context of § 1981. Thus, even if the NCAA's ability to regulate its member institutions could constitute the purposeful availment of a member's forum state, the relevant member institution that the NCAA should have been regulating in

this case was in Arizona, and Aych's discrimination claim arises from the NCAA's contacts there. Thus, the Court finds that Aych fails to establish that his claim his related to the NCAA's contacts with California.

### C. Specific Personal Jurisdiction Conclusion

As Aych fails to meet the first two prongs necessary to establish specific personal jurisdiction, the burden does not shift to the NCAA and the Court finds no need to examine the third prong. Aych fails to make a prima facie showing supporting the exercise of personal jurisdiction over the NCAA. Accordingly, the Court finds it lacks personal jurisdiction over the NCAA.

## V. CONCLUSION

For the reasons discussed above, the Court **DISMISSES** the NCAA without prejudice, for lack of personal jurisdiction, and without leave to amend, as the Court finds "the allegation of other facts consistent with the challenged pleading could not possibly cure the deficiency." *Schreiber Distrib.*, 806 F.2d at 1401.

**IT IS SO ORDERED.**

July 15, 2024

_____
**OTIS D. WRIGHT, II
UNITED STATES DISTRICT JUDGE**